CITY of VAN BUREN, Arkansas *v.* Curtis SMITH

01-73                                                    46 S.W.3d 527

Supreme Court of Arkansas
Opinion delivered June 21, 2001

*Hardin, Jesson & Terry, PLC*, by: *J. Rodney Mills* and *J. Leslie Evitts, III*, for appellant.

*Ray Hodnett*, for appellant.

ANNABELLE CLINTON IMBER, Justice. Curtis Smith, a fifteen-year veteran of the Van Buren Fire Department, was discharged from his position as a firefighter on January 29, 1999, by the Mayor of Van Buren. The City of Van Buren asserted that Mr. Smith's termination was the result of three separate events that occurred on January 27, 1999, in which Mr. Smith acted inappropriately toward superior officers and thereby violated department rules. The termination was upheld by the Van Buren Civil Service Commission. On appeal to the circuit court, the circuit judge took additional testimony and found that, while Mr. Smith had violated the department's rules and regulations, his inappropriate behavior on January 27, 1999, was not the actual reason for the termination, but merely a pretext; rather, Mr. Smith's termination actually resulted from his public criticism of the Van Buren Police Department's handling of a drowning incident in October of 1998. In reversing the decision of the Van Buren Civil Service Commission,

the circuit court held that Mr. Smith should have been suspended for thirty days without pay and that he should be reinstated as a fireman. It is from this order that the City of Van Buren appeals. We affirm the circuit court.

## I. Standard of Review

We review the findings of the circuit court to determine whether they are clearly against the preponderance of the evidence. *Tovey v. City of Jacksonville*, 305 Ark. 401, 808 S.W.2d 740 (1991); *Dalton v. City of Russellville*, 290 Ark. 603, 607, 720 S.W.2d 918 (1986). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Foundation Telecommunications v. Moe Studio*, 341 Ark. 231, 16 S.W.3d 531 (2000).

## II. Sufficiency of the Evidence

For its first point on appeal, the City of Van Buren argues that the preponderance of the evidence does not support the circuit court's decision to reverse the civil service commission and reinstate Mr. Smith as a firefighter. "A right of appeal by the city or employee is given from any decision of the commission to the circuit court within whose jurisdiction the commission is situated." Ark. Code Ann. § 14-51-308(e)(1)(A) (Repl. 1998). The circuit court reviews decisions of the civil service commission *de novo* and has jurisdiction to modify the punishment fixed by the commission even if the court agrees that the officer violated department rules and regulations. *City of Little Rock v. Hall*, 249 Ark. 337, 459 S.W.2d 119 (1970). *See also Tovey v. City of Jacksonville, supra.* The circuit court may modify the punishment even if the evidence it relies upon in doing so was not presented to the commission. *City of Little Rock v. Hall, supra.*

According to testimony before the Van Buren Civil Service Commission, Mr. Smith attended a training meeting conducted by Captain Teasie Harris on January 27, 1999. At that meeting, Capt. Harris was explaining the department's new standard operating procedure, which called for the use of one-and-one-half-inch lines to combat vehicle fires rather than one-inch lines. During this explanation, Mr. Smith exclaimed loudly that "[t]hat was the stupidest G** d***ed thing he had ever heard." Although Capt.

Harris informed Mr. Smith that there would be no argument concerning the new procedure and attempted to resume training, Mr. Smith continued to argue with Capt. Harris. Both Capt. Harris and another witness, Leslie Stevenson, testified that Mr. Smith's comment was directed toward Capt. Harris and that Mr. Smith's outburst was disrespectful and degrading to Capt. Harris and to the department. Mr. Stevenson admitted that foul language was commonly used by members of the department, but he also stated that such language was never directed toward superior officers.

Later that same day, Captain Fred Trent was using the telephone at the fire station when Mr. Smith's verbal banter became so loud that Capt. Trent had to leave the room to complete his conversation. Mr. Smith became even louder, thereby forcing Capt. Trent to return to the room on two separate occasions to ask Mr. Smith to be quiet. Battalion Chief Gary Huffman, who witnessed the incident, testified that Mr. Smith was using obscene language, "razzing" Capt. Trent about his telephone usage, and being generally disrespectful to his superior officer.

Finally, that same day, Chief Dennis Gilstrap of the Van Buren Fire Department undertook to speak with Mr. Smith about these instances of insubordination. While he was attempting to do so, Mr. Smith continually interrupted him with questions such as "[w]hat in the h*** did I do?" and "[w]ell, what in the f*** did I do?" Chief Gilstrap felt that Mr. Smith was deliberately attempting to make him angry and twice instructed Mr. Smith to "shut up." Mr. Smith continued his antagonism until Chief Gilstrap finally ordered him to go home. Chief Gilstrap suspended Mr. Smith without pay until further notice and recommended to the Mayor of Van Buren that Mr. Smith's employment be terminated. Mayor John Riggs accepted the chief's recommendation and terminated Mr. Smith's employment for violations of the Van Buren Fire Department Rules and Regulations, Sections 15 and 44.

The specific sections that Mr. Smith was accused of violating provide as follows:

> SECTION 15: Officers and members are cautioned that the use of obscene, immoral, profane or disrespectful language, agitating and acts tending to create dissension in the department, or attempt to cast unfavorable reflections upon any members of the department will not be tolerated.

SECTION 44: The following acts, infractions or violations of the rules and regulations shall be deemed, upon conviction, as sufficient cause for separation from the service.

1. Willful disobedience to orders.

3. Disrespect or insolence toward a superior officer.

* * *

7. Conduct unbecoming an officer or member of the department.

* * *

9. Agitating or creating dissension in any manner whatsoever to create dissatisfaction with any member or members, or ill feeling of any kind.

The Van Buren Civil Service Commission unanimously upheld the mayor's decision. Mr. Smith then appealed the commission's determination to the Circuit Court of Crawford County. The circuit court allowed Mr. Smith to present additional evidence pertaining to an incident at Lake Lou Emma on October 23, 1998, wherein Mr. Smith attempted to save the life of a drowning woman. Mr. Smith became disgruntled when he arrived at Lake Lou Emma in response to an emergency call and observed two police officers and the fire marshall standing nearby watching a woman floating in the lake. Mr. Smith asserted that these officials had been on the scene for at least fifteen minutes without attempting to help her and that, when he entered the water in an attempt to save her from drowning, they offered him no assistance. Mr. Smith was able to successfully remove the woman from the water, but she subsequently died.

Unhappy with the behavior of the officers on the scene, Mr. Smith wrote a letter to Van Buren's mayor, fire chief, police chief, and city council members, charging that the officers "committed a severe dereliction of duty bordering on the criminal and should be subjected to disciplinary measures fitting for such gross incompetence." Robert "Bob" Gilstrap, who was Chief of the Van Buren Fire Department at the time of the Lake Lou Emma incident, testified that he "felt like [Mr. Smith] had probably stepped over a line, and he had himself in a position that could cause some

problems" as a result of his letter to the various city officials. Bob Gilstrap was the fire chief for about seven years, beginning in 1992. He testified that even before he became chief, there had been talk about discharging Mr. Smith because of conflicts between Mr. Smith and the previous fire chief. He further testified that he would have had grounds during his own term as fire chief to terminate Mr. Smith's employment based upon violations of department rules, but that he considered Mr. Smith to be a good emergency-service worker. According to Bob Gilstrap, "one of [Mr. Smith's] short-comings was that he was strong-willed and opinionated. . . . He had an opinion on just about everything, and he usually stated it. That would put him in conflict with his superiors and the former Chief had problems with him."

On January 1, 1999, Dennis Gilstrap succeeded his brother, Bob Gilstrap, as Chief of the Van Buren Fire Department. Within one month of assuming his duties as fire chief, Dennis Gilstrap recommended that Mayor Riggs discharge Mr. Smith. According to one witness, Bob Gilstrap disclosed that Dennis Gilstrap had made a statement, shortly after the drowning incident in October 1998, that Mr. Smith's "days were numbered" at the fire department because of his letter complaining about the police officers' actions at Lake Lou Emma. Chief Dennis Gilstrap denied making any such statement. He testified that he had very limited knowledge of the events surrounding the Lake Lou Emma incident and that it was not a motivating factor in his decision to recommend to the mayor that Mr. Smith be terminated.

In an order entered on October 11, 2000, the Crawford County Circuit Court ruled that Mr. Smith had been wrongfully terminated. The circuit court found that the correspondence sent by Mr. Smith to city officials as a result of the drowning incident at Lake Lou Emma "had a direct bearing [on], if not the total reason, for [Mr. Smith's] termination." The court further noted that "[t]here is no doubt that Fireman Smith is opinionated, and often speaks when it would be better to simply listen. However, the City of Van Buren tolerated this behavior for fifteen years, and to now use this as a reason for termination points more, in the Court's opinion, to the incident at Lake Lou Emma." Thus, the circuit court made the determination that Mr. Smith's termination was *not* predicated upon the three incidents that occurred at the fire station on January 27, 1999, but that his termination resulted from Mr. Smith's criticism of the Van Buren Police Department. According to the circuit court's order, this determination was based on (1) testimony by the former fire chief, Bob Gilstrap, that he believed

Mr. Smith had gone too far by writing the letter; (2) the testimony of several firemen, including former Chief Bob Gilstrap, who indicated Mr. Smith was a good fireman, particularly out on the job, but that problems arose from his being opinionated; and (3) the fact that Chief Dennis Gilstrap had "philosophical differences" with Mr. Smith and had not always gotten along with him. Although the circuit court recognized that Mr. Smith's cursing would ordinarily be sufficient grounds for termination of employment, the evidence demonstrated that such cursing was common around the fire station. Under these circumstances, the court found that Mr. Smith's inappropriate behavior on January 27, 1999, was not a sufficient basis for termination in the case at bar.

■ The circuit court reversed the commission's decision upholding Mr. Smith's discharge and held instead that Mr. Smith should have been suspended without pay for thirty days.[1] The court order also reinstated Mr. Smith as a fireman for the City of Van Buren.[2] Such a modification is within the authority of the circuit court. *City of Little Rock v. Hall, supra.* Based upon the evidence before the commission, along with the additional evidence originally presented to the circuit court, we cannot say that the circuit court's findings, as set forth in its order and judgment, are clearly against the preponderance of the evidence.

### III. Presentation of Additional Evidence

For its second point on appeal, the City of Van Buren contends that it was error for the circuit court to admit into evidence testimony concerning events that occurred prior to January 27, 1999. Specifically, Van Buren asserts that such evidence is irrelevant to the issue of whether Mr. Smith's employment was properly terminated because of his behavior on January 27, 1999. Van Buren further argues that Mr. Smith waived his right to present additional evidence and should have been estopped from doing so because, at the hearing before the commission, he argued that no evidence of events preceding January 27, 1999, should be introduced.

---

[1] The court ordered Mr. Smith to attend counseling with Dr. Philip Barling "in an effort to help his working relationship with city personnel, and to alleviate the conflict created by his opinionated views."

[2] On December 29, 2000, the circuit court entered judgment against the City of Van Buren for Mr. Smith's lost wages in the amount of $15,122.13, and further awarded costs in the amount of $1,100.00. These figures are not disputed by the City of Van Buren.

■ The circuit court "shall review the commission's decision on the record and may, in addition, hear testimony or allow the introduction of further evidence upon the request of either the city or the employee," provided the evidence is competent and otherwise admissible. Ark. Code Ann. § 14-51-308(e)(1)(C) (Repl. 1998). "The relevancy of evidence is within the trial court's discretion, subject to review if abused." *Dalton v. City of Russellville*, 290 Ark. 603, 607, 720 S.W.2d 918, 921 (1986).

■ ■ Van Buren has offered no citation to authority to support its argument that the trial court erred in allowing additional evidence to be presented despite its statutory authority to do so. This court does not consider arguments that are unsupported by convincing argument or sufficient citation to legal authority. *Arkansas Pub. Defender Comm'n v. Greene County Cir. Ct.*, 343 Ark. 49, 32 S.W.3d 470 (2000); *Judicial Discipline & Disab. Comm'n v. Thompson*, 341 Ark. 253, 16 S.W.3d 212 (2000); *Rainey v. Hartness*, 339 Ark. 293, 5 S.W.3d 410 (1999). Moreover, we cannot say that the circuit court abused its discretion by admitting the additional evidence that was relevant to the issue of whether Mr. Smith's behavior on January 27, 1999, was the actual reason for Mr. Smith's termination or merely a pretext.

Affirmed.