T.J. SMITH, Jr., and Earnestine Smith *v.* Edward MALONE

CA 03-146                                      117 S.W.3d 643

Court of Appeals of Arkansas
Division I
Opinion delivered September 17, 2003

[Petition for rehearing denied October 8, 2003.]

*Baxter, Jensen, Young & Houston,* by: *Perry Y. Young,* for appellants.

*Curtis E. Rickard,* for appellee.

OLLY NEAL, Judge. This appeal concerns the trial court's granting of specific performance of an oral agreement to convey real property. We reverse.

Appellee Edward Malone is the former son-in-law of appellants T.J. Smith and Earnestine Smith. Appellee was married to appellants' daughter Patricia until her death in May 2001. In

March 1987, appellants acquired 10.5 acres of real property in Saline County. The parties had an agreement to purchase the property together so that each couple would own a five-acre tract and pay one-half of the purchase price. In May 1990, appellants conveyed two acres of the property to appellee and Patricia as a gift.

Appellants filed suit in March 2001, alleging that appellee had built a shed that encroached upon their property, placed a natural gas line across the property, and destroyed a fence on their property. Appellants sought damages for both the encroachments and for the destruction of the fence, injunctive relief in the form of an order requiring removal of the encroaching shed, and interest, attorney's fees, and costs. Appellee answered, denying the material allegations of the complaint. Appellee also filed a counterclaim, alleging that there was an agreement that appellee would pay one-half of the purchase price and own one-half of the property, and seeking specific performance of the agreement by compelling appellants to convey the remaining 3.25 acres to appellee. Appellants responded to the counterclaim by denying the material allegations and asserting the affirmative defenses of the statute of frauds, the statute of limitations, and laches.

Appellant Earnestine Smith testified that she and her husband purchased the property in 1987 from Kenneth and Betty Isbell, paying a $500 down payment and signing a note for monthly payments of $188.08. She testified that, at the time the property was purchased, appellants had an agreement with appellee and Patricia Malone that appellee could acquire one-half of the property and pay one-half of the purchase price. She further testified that appellants paid the note off early, due to the maturing of a certificate of deposit, but that neither appellee nor Patricia Malone made any payments towards the purchase price. Ms. Smith testified that, in 1990, two acres were conveyed to appellee and that the deed was in the nature of a gift to her daughter. She also testified that appellee did not object to receiving only two acres instead of five because appellee "could not afford to purchase the full five acres." She stated that a pond was built between appellants' and appellee's homes and admitted that appellee and Patricia Malone took care of building the pond.

Ms. Smith also testified that the 1990 conveyance was the result of an agreement that appellee would not have an interest in the three acres that were not conveyed at that time. She stated that,

between 1990 and Patricia Malone's death in 2001, neither appellee nor Patricia Malone made any claim to the disputed three acres and that, since 1990, she paid the taxes on approximately eight acres without contribution from appellee. Ms. Smith testified that, in 1997, she paid Patricia Malone $5,344.43 for the pond and a fence; that the pond was for family use and for her husband's enjoyment after his stroke; and, that half of the pond was on land not claimed by appellee.

Appellee Edward Malone testified that his wife and appellant T.J. Smith were the ones who came up with the idea of jointly purchasing the property. He testified that it was the parties' intention to purchase the ten acres and divide it equally; that he had built a shed on the property, thinking that he owned the entire five acres; and, that the 1990 conveyance was a result of his being audited by the IRS and appellants fearing that the IRS would place a lien on the entire five acres. He also testified that he had the pond situated so that one-half of it was on the five acres he claims.

Appellee further testified that he learned during a conversation with Earnestine Smith that took place approximately one month after his wife's death that he did not own the entire five acres. He stated that he asked Mrs. Smith to survey the property and divide it equally but the request was refused. He testified that he believed that his wife had paid for half of the property and that, although he did not have any personal knowledge or proof that the payments had been made because his wife had handled the original 1987 transaction, he would immediately pay for his half if given the opportunity. He admitted that, between 1990 and 2001, he did not ask for a deed to the disputed three acres or object to having received only two acres and that he did not pay taxes on the disputed property.

After a hearing, the trial court ruled from the bench and found that the parties had an agreement to divide the property; that appellee had not made any payments toward that agreement; that the parties still contemplated that the agreement could be performed after the two acres were conveyed to appellee in 1990; and that appellee had thirty days from the date of the hearing to pay one-half of the purchase price plus interest and one-half of the property taxes to appellants, who were to execute and deliver a warranty deed for the remainder of the property. The trial court further ruled that, in the event that appellee failed to do so, his interest in the three acres was to be forfeited. Appellants were

awarded judgment for $240 for the value of the fence destroyed by appellee. An order memorializing these findings was entered on October 15, 2002. Appellee has tendered a check in the sum of $19,916.65, together with a warranty deed, in compliance with the trial court's order. This appeal followed.

Appellants raise six points on appeal: that the agreement is unenforceable due to the statute of frauds; that the alleged agreement is unenforceable due to the lack of specification of material terms; that the statute of limitations excused any obligation of performance; that the agreement became unenforceable with the death of Patricia Malone; that the agreement was merged into the conveyance of two acres to appellee in 1990; and that the trial court erred in refusing to admit testimony concerning the 1990 transaction. We find the statute of frauds issue to be determinative and pretermit discussion of the other issues.

■ Whether or not specific performance should be awarded in a particular case is a question of fact for the trial court; on appeal, the question before the appellate court is whether the decision to grant specific performance was clearly erroneous. *Dossey v. Hanover, Inc.*, 48 Ark. App. 108, 891 S.W.2d 67 (1995). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *City of Van Buren v. Smith*, 345 Ark. 313, 46 S.W.3d 527 (2001).

Appellants first argue that the agreement does not satisfy the statute of frauds. We agree. The statute of frauds, Ark. Code Ann. § 4-59-101(a)(4) (2001), provides as follows:

(a) Unless the agreement, promise, or contract, or some memorandum or note thereof, upon which an action is brought is made in writing and signed by the party to be charged therewith, or signed by some other person properly authorized by the person sought to be charged, no action shall be brought to charge any:

...

(4) Person upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them[.]

■■ We recognize, of course, that partial performance of a contract by payment of a part of the purchase price and placing a

buyer in possession of land pursuant to an agreement of sale and purchase is sufficient to take the contract out of the statute of frauds. *Johnston v. Curtis*, 70 Ark. App. 195, 16 S.W.3d 283 (2000); *Langston v. Langston*, 3 Ark. App. 286, 625 S.W.2d 554 (1981); *Sossamon v. Davis*, 271 Ark. 156, 607 S.W.2d 405 (Ark. App. 1980). The possession of the property by the purchaser, together with the making of valuable improvements on the property, has also been held sufficient to take the agreement out of the statute of frauds. *French v. Castleberry*, 238 Ark. 1038, 386 S.W.2d 482 (1965); *Harrison v. Oates*, 234 Ark. 259, 351 S.W.2d 431 (1961); *Phillips v. Jones*, 79 Ark. 100, 95 S.W. 164 (1906). The improvements must be more than routine maintenance. *French, supra.* It is necessary to prove both the making of the oral agreement and its part performance by clear and convincing evidence. *Johnston v. Curtis, supra.*

The trial court did not expressly find that there was sufficient partial performance to take the oral agreement, admitted by appellants, out of the statute of frauds. However, such a finding is implicit in the trial court's grant of specific performance. The trial court also found that appellee did not pay any money toward the purchase price of the property. It is undisputed that appellee was in possession of two acres of the five acres in dispute. However, appellants gave appellee and Patricia Malone two acres as a gift in 1990. This gift was inconsistent with the oral contract for the purchase of the property. In order for possession to be sufficient, it must be solely referable to the oral agreement. *French, supra; Sossamon, supra.* Further, there was no showing that appellee possessed the disputed three acres other than his having a shed extend some two feet onto the three acres. Therefore, appellee's possession is not sufficient part performance to remove the case from the statute of frauds.

Appellee argues that he made improvements to the land in the form of a pond and a shed which, when coupled with his possession, takes the agreement out of the statute of frauds. We believe that the construction of the pond does not amount to an improvement as to the three acres; it is located one-half on appellee's two acres and one-half on appellants' property. Further, it was constructed for the benefit of appellant T.J. Smith following his stroke. The extension of the shed some two feet onto the disputed three acres is *de minimis*. Appellee has not cited us to a single case in which partial performance has been found sufficient

to satisfy the statute of frauds without some payment to the sellers. *See Stooksberry v. Pigg*, 172 Ark. 763, 290 S.W. 355 (1927) (holding that statute of frauds is not satisfied where the only performance was possession and there had been no payments or valuable improvements made). The trial court clearly erred in ordering specific performance.

Reversed.

GRIFFEN, J., agrees.

ROBBINS, J., concurs.

JOHN B. ROBBINS, Judge, concurring. While I agree with the majority's opinion that we must reverse this appeal, I would do so under a different rationale. There is no dispute as to what occurred when appellants Smith bought the subject 10.5-acre parcel of property in 1987, which could be fairly paraphrased as follows: The Smiths represented to their daughter and appellee Malone that the Smiths would convey one-half of this parcel to the Malones upon payment by the Malones of one-half of the purchase price.

This representation or promise was no more than an offer. This offer invited acceptance by performance, not by a reciprocal promise. For that matter, at no time did either party or the trial court suggest that the Malones had promised to buy the property. The performance that would have constituted acceptance of the Smiths' offer would have been payment of one-half of the sum that the Smiths had paid for the whole parcel. *See Restatement (Second) of Contracts* § 50(2). While Mr. Malone contended that he thought his wife had paid this price to the Smiths, the Smiths denied it and the trial court found from the bench that the Malones had not "paid one dime towards that agreement."

Although an offeror and offeree may contract to hold an offer open, thus creating an option contract that is independent of the object of the outstanding offer, here there was no evidence to indicate that such an option was either contemplated or contracted for. Consequently, the Smiths' offer to the Malones could be withdrawn at any time before acceptance, and such withdrawal could not have been more clearly made than Mrs. Smith did when Mr. Malone inquired about having the property surveyed and divided. Whereupon, Mrs. Smith advised him that she was not surveying anything, was not signing anything, and did not want anyone on her property.

Therefore, on our de novo review I would hold that the offer to sell one-half of the property was not accepted within a reasonable time and certainly not before its withdrawal was communicated by Mrs. Smith to Mr. Malone. Inasmuch as there was no contract, the Statute of Frauds is not applicable and need not be invoked.