Cite as 2024 Ark. 102

# SUPREME COURT OF ARKANSAS
**No.** CV-23-575

|  |  |
|---|---|
|  | **Opinion Delivered:** June 6, 2024 |
| CITY OF HELENA-WEST HELENA; AND CHRISTOPHER FRANKLIN AS MAYOR OF THE CITY OF HELENA-WEST HELENA | APPEAL FROM THE PHILLIPS COUNTY CIRCUIT COURT [NO. 54CV-23-07] |
| APPELLANTS |  |
| V. | HONORABLE CHRISTOPHER W. MORLEDGE, JUDGE |
| GREG WILLIAMS |  |
| APPELLEE | AFFIRMED. |

**COURTNEY RAE HUDSON, Associate Justice**

Appellants City of Helena-West Helena (City) and Christopher Franklin as Mayor of the City, appeal from the Phillips County Circuit Court's order granting appellee Greg Williams's request for declaratory relief and ruling that the previous mayor's veto of two city ordinances was proper. For reversal, appellants argue that (1) the circuit court erred in failing to find that the alleged veto was properly rescinded and (2) the circuit court erred in finding that Ordinances 39-2022 and 40-2022 were properly vetoed. We affirm.

On December 29, 2022, the Helena-West Helena City Council (Council) called a special meeting for the following afternoon. At that December 30, meeting, the Council passed Ordinances 39-2022, which increased the conflict-of-interest limit for contracts signed with the City for services provided by an employee, elected official, or family members of employees or elected officials from $2500 to $100,000, and 40-2022, which

raised the mayor's base pay from $48,000 to $70,000 and implemented other salary and personnel changes.

On December 31, then-mayor Kevin Smith vetoed both ordinances, as well as any other actions taken by the Council at the December 30 meeting.[1] He explained his reasons for the vetoes in a letter to the City Clerk dated December 31, 2022, at 11:00 p.m. The letter indicated that Smith vetoed the Council's actions primarily due to the timing of the "lame-duck city council meeting," which "seemed to be designed to circumvent the new city council being seated" only a few days later. Copied on Smith's letter were the City Treasurer, the City Attorney, and the Council (both the outgoing and the newly elected members). The letter also indicated that it was hand-delivered to both the City Clerk's office and the Council's chamber.

Mayor Smith's term ended at midnight on December 31. Mayor Franklin, who was a member of the Council when it passed the ordinances, was sworn in as the new mayor on January 1, 2023. On January 2, Franklin wrote his own letter to the City Clerk, stating that he was "rescinding any action or attempted action to veto the city council's actions taken on Friday, December 30, 2022[,]" that "Ordinances 39 and 40 shall become law[,]" and that "this veto should not appear on the next regular meeting agenda or be laid before the council for consideration." The Council's next meeting was held on January 3. Smith did not attend this meeting, and no one formally presented his veto letter at the meeting.

---

[1]Although Smith's veto covered all actions taken by the Council at that meeting, the parties discuss only the Council's passage of the two ordinances.

On January 10, Williams, who is a citizen and resident of the City, filed a complaint for a declaratory judgment and a petition for a temporary restraining order (TRO) against the City and Mayor Franklin. He requested a declaratory judgment that the mayoral veto of the two ordinances had been properly executed in accordance with Ark. Code Ann. § 14-43-504, that Franklin did not have the power to rescind this veto, and that neither veto was overridden by a two-thirds vote of the Council. He also sought an injunction prohibiting any expenditure of City funds pursuant to the new ordinances for hiring additional employees, increasing the pay for certain positions, and increasing the conflict-of-interest limit for contracts with the City. The circuit court entered an order granting the TRO on January 11, 2023.

Appellants filed an answer denying that Williams was entitled to declaratory or injunctive relief. They claimed that Smith's attempted veto of the ordinances was ineffective due to his failure to comply with the statutory requirements and that Franklin's letter rescinding the veto was therefore "moot." Attached to the answer was an affidavit by Franklin stating that the City Clerk's office was closed on Saturday, December 31, 2022; that when the office reopened on January 3, 2023, Smith was no longer the mayor; that Smith's veto letter was not "filed" with the City Clerk; and that Smith's letter was not presented to the Council at its next meeting on January 3. The veto letter and Franklin's rescission letter were also attached as exhibits. Appellants filed a motion to dissolve the TRO and to dismiss the complaint that same day.

On March 20, the circuit court held a hearing on the TRO, as well as on the merits of Williams's complaint. Then-mayor Smith testified that on December 31, he prepared a

3

letter vetoing Ordinances 39-2022 and 40-2022 and explaining his reasons for the veto. He stated that he used his keys to open the City Clerk's office late in the evening on December 31 and that he placed the letter on the City Clerk's desk and in the mailboxes for the Council and the other elected officials. Smith testified that, to his knowledge, the City Clerk did not thereafter present the veto letter to the Council even though it was her duty to do so. The only other witness to testify was Mayor Franklin. He stated that he took office on January 1, 2023, and learned about Smith's veto letter. Franklin then wrote his own letter rescinding the veto. He testified that the Council was also informed about his rescission. Franklin admitted that even though there was no statute authorizing him to rescind a previous mayor's veto, he still had no intention of presenting Smith's veto to the Council.

On April 24, 2023, the circuit court entered an order granting a declaratory judgment in favor of Williams. The court found that "former Mayor Smith timely and properly executed a veto regarding Helena-West Helena Ordinance 39-22, Helena-West Helena Ordinance 40-22 and every action of the city council during the meeting on December 30, 2022 meeting. That Mayor Kevin Smith's veto of said actions by the Helena-West Helena City Council on December 30, 2022, was not overridden by a two-thirds vote of the Helena-West Helena City Council." The court further stated that all of the actions taken by the Council on December 30, including passage of the two ordinances, were hereby null and void. Appellants filed a timely notice of appeal from this order.

On appeal, appellants first contend that the circuit court erred in failing to find that Smith's alleged veto was properly rescinded. Our standard of review on appeal from a bench trial is whether the circuit court's findings were clearly erroneous or clearly against the

4

preponderance of the evidence. *Williams v. Baptist Health*, 2020 Ark. 150, 598 S.W.3d 487. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, considering all the evidence, is left with a definite and firm conviction that a mistake has been made. *Id*. However, a circuit court's conclusion on a question of law is reviewed de novo. *Ark. Voter Integrity Initiative, Inc. v. Thurston*, 2024 Ark. 43, 686 S.W.3d 477.

Williams asserts that we are precluded from reviewing appellants' rescission argument because they failed to obtain a ruling from the circuit court on whether Franklin properly rescinded Smith's veto. We agree. While there was testimony about Franklin's letter of rescission, appellants primarily focused on whether the veto itself was effective. In fact, appellants claimed in their answer that the rescission issue was moot due to Smith's alleged failure to comply with the statutory requirements for a veto. However, even assuming that the issue was raised and not abandoned by appellants, it is clear that the circuit court did not rule on it, either orally or in its written order. It is an appellant's responsibility to obtain a ruling to preserve an issue for appeal, and the failure to secure a ruling on an argument precludes appellate review. *Neal v. Sparks Reg'l Med. Ctr.*, 2012 Ark. 328, 422 S.W.3d 116. Thus, we do not address the merits of this argument.

In their next point on appeal, appellants argue that the circuit court erred in finding that Ordinances 39-2022 and 40-2022 were properly vetoed. The statutory provisions setting out the requirements for a mayoral veto in a city of the first class are found in Ark. Code Ann. § 14-43-504 (Supp. 2023):

> (a) The mayor of the city shall be its chief executive officer and conservator of its peace. It shall be his or her special duty to cause the ordinances and regulations of the city to be faithfully and constantly obeyed.

(b) The mayor shall:

(1) Supervise the conduct of all the officers of the city, examine the grounds of all reasonable complaints made against them, and cause all their violations of duty or other neglect to be properly punished or reported to the proper tribunal for correction;

(2) Have and exercise the power conferred on sheriffs, within the city limits, to suppress disorder and keep the peace; and

(3) Perform such other duties compatible with the nature of his or her office as the city council may from time to time require.

(c) The mayor shall report, within the first ninety (90) days of each year and at such other times as he or she shall deem expedient, to the council the municipal affairs of the city and recommend such measures as may seem advisable.

(d)(1) In addition to the powers and duties already pertaining to that office, the mayor of any city of the first class shall be clothed with and exercise and perform the following:

(A) A mayor may veto within five (5) days, Sundays excepted, after the action of the city council thereon, any ordinance, resolution, or order adopted or made by the council, or any part thereof, which in his or her judgment is contrary to the public interest; and

(B)(i) In case of a veto, before the next regular meeting of the council, the mayor shall file in the office of the city clerk, to be laid before that meeting, a written statement of his or her reasons for so doing.

(ii) An ordinance, an order, or a resolution or part thereof, vetoed by the mayor is invalid unless, after the written statement is laid before it, the council, by a vote of two-thirds (2/3) of all the council members elected thereto, passes it over the veto.

(2) The mayor does not have the power of veto in circumstances prescribed under § 14-43-501(a) or § 14-43-411(a).

The primary rule of statutory interpretation is to give effect to the intent of the legislature. *Mississippi Cnty. v. City of Blytheville*, 2018 Ark. 50, 538 S.W.3d 822. We first construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* When the language is plain and unambiguous, we determine the drafter's intent from the ordinary meaning of the language used. *White v.*

6

*Owen*, 2021 Ark. 31, 617 S.W.3d 241. The correct interpretation and application of an Arkansas statute is a question of law that is reviewed de novo, as it is for this court to determine the meaning of a statute. *Calhoun v. Area Agency on Aging of Sw. Ark.*, 2021 Ark. 56, 618 S.W.3d 137; *Hill v. Gallagher*, 2016 Ark. 198, 491 S.W.3d 458.

Appellants contend that the provisions in subdivision (d)(1) of the statute outline a "process" that a mayor must follow when issuing a veto. They claim that then–mayor Smith failed to comply with this process because there was no evidence that the purported veto was either (1) filed or (2) laid before or presented to the Council at its next regular meeting. Appellants therefore assert that Smith's veto of the ordinances was ineffective.

With regard to the filing requirement, appellants argue that Smith's action of simply placing the veto letter on the City Clerk's desk on a Saturday night, after business hours, did not comply with the statute. We disagree. We note, first of all, that the statute does not require that the veto itself be filed; rather, it is the written statement of the mayor's reasons for the veto that must be filed in the office of the City Clerk. Ark. Code Ann. § 14-43-504(d)(1)(B)(i). Furthermore, we have not held that a document must be file-stamped in order to have been properly "filed." In *Arkansas Game & Fish Commission v. Eddings*, 2009 Ark. 359, at 7–8, 324 S.W.3d 328, 332, we stated:

> Over the years, our case law has discussed this very issue of whether the file stamp determines when a paper is filed. In 2004, we summarized our jurisprudence on this point in the case of *Republican Party of Garland County v. Johnson*:
>
>> It is true that there is caselaw to the effect that the file-stamp is merely "evidence of filing." *See, e.g.*, *Stanislaus v. Austin*, 202 Ark. 441, 150 S.W.2d 610 (1941) ("[t]he act of leaving or depositing the paper in the proper office constitutes a filing of it"); *Westbrook v. McDonald*, 184 Ark. 740, 43 S.W.2d 356 (1931) ("while it is proper for an officer

7

whose duty it is to receive and file an instrument in writing to indorse thereon the date of filing when he receives the instrument, such indorsement is not the filing, but is merely an evidence of filing, and that the instrument is filed when it is delivered to the officer at his office to be received by him and kept on file").

358 Ark. 443, 451, 193 S.W.3d 248, 254 (2004); *see also Henard v. St. Francis Election Comm.*, 301 Ark. 459, 784 S.W.2d 598 (1990) (clerk's testimony of receipt of a local-option petition in circuit clerk's office, though not file marked, constituted filing); *Tucker v. Batesville Motor Co.*, 203 Ark. 553, 157 S.W.2d 492 (1942) (delivery and receipt of record from justice-of-peace court without objection constituted filing); *Cf. White v. State*, 373 Ark. 415, 284 S.W.3d 64 (2008) (petitioner's notice of appeal timely where circuit clerk erred in failing to file the notice of appeal on the day received). Other general sources confirm this black-letter principle. *See Black's Law Dictionary* 660 (8th ed. 2004) ("file, *vb*. 1. To deliver a legal document to the court clerk or record custodian for placement into the official record."); *Cf.* 16A Wright and Miller, *Federal Practice and Procedure* § 3949.1 (Juris. 4th 2009) ("if the notice is timely received by the clerk, the clerk's failure to formally "file" it within the time limit will not invalidate the appeal").

Appellants did not present any evidence to refute Smith's testimony that he placed his veto letter on the City Clerk's desk before his term as mayor ended at midnight on December 31, 2022. Nor did they claim that they did not receive notice of Smith's veto. The language in section 14-43-504(d)(1)(A) providing that "a mayor may veto within five (5) days, Sundays excepted" clearly indicates that vetoes may occur on Saturdays and during hours when the City Clerk's office is closed. Accordingly, Smith complied with both section 14-43-504(d)(1)(A) and -504(d)(1)(B)(i) by timely vetoing the Council's actions and by filing a written statement of his reasons for the veto prior to the next regular Council meeting.

Appellants also contend that Smith failed to comply with section 14-43-504(d)(1)(B)(ii) because he did not present to, or lay before, the Council at its next meeting his written statement of reasons. They claim that Smith's failure to ensure that this was accomplished, whether by Mayor Franklin, the City Clerk, or Smith himself, means that

8

the veto process was not completed. Again, we disagree with appellants' argument. Subdivision (d)(1)(B)(ii) does not affirmatively require that the mayor's reasons for the veto be presented to the Council in order to effectuate the veto. Rather, the statute provides that the ordinance vetoed by the mayor is invalid unless, after the written statement is laid before it, the council overrides the veto by a two-thirds vote. Ark. Code Ann. § 14-43-504(d)(1)(B)(ii). As Williams asserts, the statute shifts to the passive voice in this particular provision, and it focuses on the steps necessary for the Council to override the veto—not on those required for the veto itself to be valid. If we were to accept appellants' interpretation, a mayor's veto power would be limited by the Council's willingness to both meet and consider the presentation of reasons for the veto. No such limitations are found in the plain language of the statute, however, and we will not add words to a statute to convey a meaning that is not there. *3 Rivers Logistics, Inc. v. Brown-Wright Post No. 158 of Am. Legion, Dep't of Ark., Inc.*, 2018 Ark. 91, 548 S.W.3d 137.

Appellants rely on three Arkansas Attorney General Opinions, all of which opine that the statute requires two things for a valid mayoral veto: (1) that the mayor file the written statement of reasons for the veto with the city clerk before the next regular council meeting, and (2) that the mayor present the statement to the council at that meeting. *See* Op. Ark. Att'y Gen. Nos. 144 (2009), 077 (1999), and 343 (1997). None of these Attorney General opinions involve a factual situation that is directly comparable to this case. Furthermore, these opinions are not binding on this court. *Jones v. Prof'l Background Screening Assoc., Inc.*, 2020 Ark. 362, 610 S.W.3d 640. We agree with the circuit court that former mayor Smith complied with the plain language of the statute and timely and effectively

9

vetoed the Council's actions at its December 30, 2022 meeting; therefore, we affirm the circuit court's order.

Affirmed.

WOOD, J., concurs.

BAKER, WOMACK, and WEBB, JJ., dissent.

**RHONDA K. WOOD, Justice, concurring**. The plurality finds that the City did not preserve its argument that incoming Mayor Franklin rescinded outgoing Mayor Smith's veto. I disagree and thus concur. The City extensively argued this at the hearing, although Mayor Franklin was candid with the circuit court that he did not know of any direct authority supporting this interpretation. As it was preserved, this court should address it.

**KAREN R. BAKER, Justice, dissenting**. Because Kevin Smith did not properly veto ordinances 39-2022 and 40-2022 in accordance with Arkansas Code Annotated section 14-43-504(d), I must dissent from the majority's decision to affirm the circuit court's order finding that the vetoes had been properly executed. A mayor of a city of the first class has a statutory right to veto an ordinance. *See* Ark. Code Ann. § 14-43-504(d)(1)(A) (Supp. 2023). I agree with the other dissenting justices that, to effectuate such a veto, mayors must follow the steps expressly laid out for them in section 14-43-504(d) and that the failure to meet *any* of those statutory requirements renders a veto ineffective. Therefore, in my view, it is unnecessary to determine whether Smith effectively filed his written statement with the city clerk within the meaning of section 14-43-504(d), because it is undisputed by the parties that the written statement was never laid before the city council. This deficiency alone is sufficient grounds for reversal.

10

The cardinal rule of statutory construction is to construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *McMillan v. Live Nation Ent., Inc.*, 2012 Ark. 166, at 4, 401 S.W.3d 473, 476. We construe statutes so that no word is left void, superfluous, or insignificant, and we give meaning to every word in the statute, if possible. *Williams v. St. Vincent Infirmary Med. Ctr.*, 2021 Ark. 14, at 9, 615 S.W.3d 721, 727. In conducting this review, we will reconcile statutory provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part. *Ark. Parole Bd. v. Johnson*, 2022 Ark. 209, at 5, 654 S.W.3d 820, 823.

The majority concludes that the viability of a mayoral veto does not depend on compliance, or a lack thereof, with the statutory requirement that the mayor's written statement must be laid before the city council at its next regular meeting. Specifically, the majority contends that "the statute shifts to the passive voice in [subdivision (d)(1)(B)(ii)], and it focuses on the steps necessary for the Council to override the veto—not on those required for the veto itself to be valid." However, this analysis is contrary to our longstanding rules of statutory construction. Section 14-43-504(d) provides that

(d)(1) . . . the mayor of any city of the first class *shall* be clothed with and exercise and perform the following:

(A) A mayor may veto within five (5) days, Sundays excepted, after the action of the city council thereon, any ordinance . . . or any part thereof, which in his or her judgment is contrary to the public interest; and

(B)(i) *In case of a veto, before the next regular meeting of the council, the mayor shall file in the office of the city clerk, to be laid before that meeting, a written statement of his or her reasons for so doing.*

(ii) An ordinance, an order, or a resolution or part thereof, vetoed by the mayor is invalid unless, after the written statement is laid before it,

11

the council, by a vote of two-thirds (2/3) of all the council members elected thereto, passes it over the veto.

Ark. Code Ann. § 14-43-504(d)(1)(A)–(B)(ii) (emphasis added).

According to the plain and unambiguous language of section 14-43-504(d), for Smith to have effectively vetoed the two ordinances, he was required to file his written statement explaining the reasoning underlying the vetoes in the office of the city clerk *and* his written statement was required to be laid before the city council at the next regular meeting. This interpretation is supported by an attorney general opinion that was rendered in response to the very question that is before this court concerning the validity of an ordinance that was vetoed by a mayor who failed to both file a written statement with the office of the city clerk and present the statement to the city council. In the opinion, section 14-43-504[1] was discussed as follows:

> [I] can opine generally . . . that assuming the mayor failed to observe the formalities required for a veto under A.C.A. § 14-43-504(e), then the veto likely failed and the ordinance probably remains effective.
>
> . . . .
>
> [A] veto is likely ineffective if the mayor fails to follow the requisite procedures. To conclude otherwise would effectively deny the council its authority to pass the ordinance over the veto. The language of subsection (e)(2)(B) may also indirectly support this conclusion wherein it provides that "[n]o such ordinance . . . vetoed by the mayor shall have any force or validity unless, *after the written statement is laid before it*, the council shall . . . pass it over the veto." (Emphasis added). This arguably suggests by negative implication that an ordinance will have force and validity if the prerequisite written statement is not presented.

---

[1] I note that, in opinion No. 144, the attorney general's analysis was focused on section 14-43-504(e). However, that section was recodified as section 14-43-504(d), and the requirements that were set forth in section 14-43-504(e) have remained substantively unchanged.

Op. Ark. Att'y Gen. No. 144 (2009).

Moreover, as the majority correctly notes, there are two additional attorney general opinions that lend support to this conclusion. *See* Op. Ark. Att'y Gen. Nos. 077 (1999) and 343 (1997). While attorney general opinions are not binding on this court, we have held that they can be persuasive. *Johnson*, 2022 Ark. 209, at 8, 654 S.W.3d at 825. I disagree with the majority's conclusion that the foregoing opinions are inapplicable, but rather, I find them to be persuasive in the present case. Further, since the rendering of these attorney general opinions, the legislature has not substantively amended the language in section 14-43-504(d). *See Mississippi Cnty. v. City of Blytheville*, 2018 Ark. 50, 538 S.W.3d 822 (finding that a lack of legislative clarification or amendment of challenged statutory language following numerous attorney general opinions was significant); *see also Jackson v. City of Blytheville Civ. Serv. Comm'n*, 345 Ark. 56, 43 S.W.3d 748 (2001) (observing, as part of a statutory-interpretation analysis, that there had been no legislative clarification of the challenged statute following an attorney general opinion).

In light of the foregoing, because Smith's written statement explaining the reasoning behind his attempted vetoes was not laid before the city council at its next regular meeting, ordinances 39-2022 and 40-2022 were not properly vetoed in accordance with Arkansas Code Annotated section 14-43-504(d).

Accordingly, I dissent from the result reached by the majority and would reverse and remand.

**SHAWN A. WOMACK, Justice, dissenting**. The only issue properly before this court is whether former Helena-West Helena mayor Kevin Smith effectively vetoed city

ordinances 39-2022 and 40-2022.[1] He did not. In Arkansas, the mayor of a city of the first class has the right to veto a city council's adoption of an ordinance, resolution, or order.[2] Whether a mayor exercises his or her right to veto is completely discretionary.[3] The performance of the statutory processes required to exercise this right is not.[4] Instead, mayors must follow the steps expressly laid out for them in Ark. Code Ann. § 14-43-504(d).[5] A failure to properly exercise and perform the veto renders the veto ineffective. That is precisely what happened here because Mr. Smith failed to properly file a written statement in the office of the city clerk explaining the reasons for his veto, and the written statement was not laid before the city council at its next regular meeting. Accordingly, the circuit court's findings that Mr. Smith vetoed the two ordinances must be reversed.

I. *Discussion*

A. How a Mayor of the First Class Properly
Exercises and Performs a Veto

Arkansas Code Annotated section 14-43-504(d) is plain and unambiguous. It is straightforward as long as proper principles of textual interpretation are employed. In

---

[1] The issue of whether current mayor Christopher Franklin rescinded Mr. Smith's veto is unpreserved for appellate review because the circuit court did not rule on it. Without the circuit court's decision to review, this court is precluded from reviewing the issue. In any event, the issue is moot because Mr. Smith's veto was ineffective. Thus, recission of the veto is a nonissue.

[2] Ark. Code Ann. § 14-43-504(d)(1)(A) (Supp. 2023).

[3] *Id*.

[4] Ark. Code Ann. § 14-43-504(d)(1)(B)(i).

[5] *Id*.

14

ascertaining the plain meaning of a statute, the court must look at the text as a whole.[6] We construe statutes so that, if possible, every word is given meaning and effect so that no word is left void, superfluous, or insignificant.[7] Punctuation is also integral to the sense of written language because the meaning of a statute will typically heed the commands of its punctuation.[8] Finally, in a related vein, the format of the parts and subparts of the text are also an aid to our interpretation.[9] With these principles in mind, the court may properly examine the relevant text:

> (d)(1) In addition to the powers and duties already pertaining to that office, the mayor of any city of the first class *shall be clothed with and exercise and perform the following:*
>
>> (A) A mayor may veto within five (5) days, Sundays excepted, after the action of the city council thereon, any ordinance, resolution, or order adopted or made by the council, or any part thereof, which in his or her judgment is contrary to the public interest *and*;
>>
>> (B)(i) In case of a veto, before the next regular meeting of the council, *the Mayor shall file in the office of the city clerk, to be laid before that meeting, a written statement of his or her reasons for so doing.*
>>
>>> (ii) An ordinance, an order, or a resolution or part thereof, vetoed by the Mayor is invalid unless, after the written statement is laid before it, the council, by a vote of two-thirds

---

[6]Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts: Whole Text Canon*, 167 (2012).

[7]*Gafford v. Allstate Insurance Company*, 2015 Ark. 110, 459 S.W.3d 277; *see also* Scalia & Garner, *supra* note 6 at 174.

[8]*See, e.g.*, Scalia & Garner, *supra* note 1 at 161 (quoting *United States Nat'l Bank of Oregon v. Independent Ins. Agents of Am., Inc.*, 508 U.S. 439, 454 (1993)).

[9] Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts: Scope-of-Subparts Canon*, 167 (2012).

(2/3) of all the council members elected thereto passes it over the veto.[10]

It is black letter law that the use of the word "shall" imposes a mandatory duty impervious to judicial discretion.[11] This contrasts with the use of the permissive word "may," which grants discretion. Here, the only matter left to the discretion of a mayor is whether he or she *will* exercise and perform the right to veto an ordinance, resolution, or order. This is because subdivision (d)(1)(A) states that "a mayor may veto." Every other provision in subdivision (d)(1) and (d)(1)(B)(i) is mandatory because each directly follows, or is related to, the "shall" language in the statute. Accordingly, mayors of first-class cities who wish to exercise and perform their right to veto must (1) veto the act within five days (excluding Sundays) of its occurrence; (2) file a written statement with the city clerk before the next regular meeting of the council; and (3) have the written statement presented at the next regular council meeting. The failure to meet any of these statutory requirements renders a veto ineffective.

This interpretation finds support in multiple canons of construction, including "Surplusage," "Whole-Text," "Scope-of-Subparts," "Punctuation," and "Conjunctive/ Disjunctive." According to the Scope-of-Subparts canon, subdivision (d)(1) applies to both subdivisions (d)(1)(A) and (d)(1)(B)(i), because material within indented subparts pertains specifically to those subparts. The majority's conclusion, however, disregards this, insisting only that subdivision (d)(1)(A) is relevant to a mayor's veto, thus neglecting the statute's

---

[10]Ark. Code Ann. § 14-43-504(d)(1)(A)−(B)(ii) (emphasis added).

[11]*Slusser v. Farm Serv., Inc.*, 359 Ark. 392, 398, 198 S.W.3d 106, 111 (2004).

comprehensive reading, rendering certain provisions superfluous, and contradicting the Whole-Text and Surplusage canons. Additionally, the majority's assertion that subdivision (d)(1)(B) pertains solely to the council's override process is a misinterpretation of the statute, as it does not condition the mayor's duties on the council's desires. Ultimately, the majority expresses valid concerns about the result the proper interpretation may lead to, but it strays from sound interpretation grounded in legal canons.

### B. Kevin Smith's Failure to Properly Exercise and Perform his Right to Veto Rendered His Veto Ineffective.

To properly exercise and perform his right to veto, Mr. Smith was required to file his written statement in the office of the city clerk, and his written statement had to be laid before the city council at the next regular meeting. Neither of those requirements was met.

Unsurprisingly, the parties disagree on what constitutes a "filing." This court has defined "to file" as "to deliver a legal document to the court clerk or record custodian for placement into the official record."[12] The City contends that the act of merely placing the written statement on the clerk's desk without official stamping or outside regular business hours does not meet the statutory definition of "to file". It also argues that the absence of a file-stamp by the city clerk, which serves as evidence of filing, signifies that the written statement was not officially lodged into the record.[13] Thus, the City maintains that Mr. Smith's action did not fulfill the statutory obligation to file the statement, thus rendering the

---

[12]*Ark. Game & Fish Comm'n v. Eddings*, 2009 Ark. 359, at 8, 324 S.W.3d 328, 332 (quoting *Black's Law Dictionary* 660 (8th ed.2004)).

[13]*See, e.g.*, *French v. State*, 2019 Ark. 388, at 1, 589 S.W.3d 373, 375 ("The file-stamp by the circuit clerk is merely 'evidence of filing.'")

17

attempted veto ineffective. Mr. Smith maintains that he did file a written statement in the clerk's office, recounting his use of city keys to enter the office after regular business hours and personally place the statement on the clerk's desk on Saturday, New Year's Eve, at 11:00 p.m., one hour before his mayoral term concluded.

The City's argument is more persuasive given the facts here; thus, I cannot say that Mr. Smith filed his written statement with the office of the city clerk. Indeed, the absence of a file-stamp, which evidences filing, supports the City's position that the statement was not officially recorded. This independently renders his veto ineffective. In any event, it is also uncontested that Mr. Smith's written statement wasn't presented at the next regular city-council meeting following the veto. This also independently rendered Smith's veto ineffective.

To conclude, Mr. Smith's failure to properly exercise and perform his right to veto renders his veto ineffective. Accordingly, the circuit court must be reversed.

For these reasons, I respectfully dissent.

WEBB, J., joins in this dissent.

*Andre K. Valley*, for appellant.

*Quattlebaum, Grooms & Tull, PLLC*, by: *Laura L. O'Hara*, for appellee.

18