Cite as 2024 Ark. App. 460

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-23-104

| | | |
|---|---|---|
| HOLLY WOOD | | Opinion Delivered September 25, 2024 |
| | APPELLANT | |
| | | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23PR-20-612] |
| V. | | |
| ESTATE OF JACOB MINETT | | HONORABLE DAVID M. CLARK, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**MIKE MURPHY, Judge**

Appellant Holly Wood appeals the decision of the Faulkner County Circuit Court denying her petition to compel the personal representative of the estate of Jacob Minett to convey real property pursuant to a purchase agreement. On appeal, Wood argues that the circuit court erred in applying the statute of frauds and that her ability to perform the contract by the option date was irrelevant. We agree that the statute of frauds applies without exception. We have jurisdiction pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(12) because it is an order from a probate case and does not concern removing a fiduciary or appointing a special administrator.

At the hearing on Wood's petition, the following was established. In December 2018, Wood and her husband were working with Minett's mother, Melody Miller, regarding

leasing and eventually purchasing a cabin Minett owned. Miller testified that she was acting as Minett's power of attorney. To that end, two documents that Miller had personally prepared were entered into evidence.

The first document was signed on December 17, 2018, by Wood and her husband. That document was titled "Purchase Agreement" and reads in part as follows:

> John and Holly Wood, husband and wife, being of sound mind, are putting $10,000 down to secure the option to purchase the property they will be leasing from Jacob Minett. . . . This is a separate agreement from the lease and is only valid after Jacob Minett has received the $10,000 in the form of a cashier's check or a personal check and all funds have cleared the bank.

> Purchase of the property can be anytime between January 1, 2019 and July 15, 2020. However, if John and Holly Wood are unable to purchase the property on or before that time, they are aware that they will forfeit the $10,000 they have put down and Jacob Minett, the owner, has the right to list the property and sell it to another party.

> Because Minett is waiting up to one and a half years before the purchase of the property, they have also agreed that any and all repairs and maintenance on the property are the full responsibility of John and Holly Wood. If John and Holly Wood are unable to purchase the property, there will be no reimbursement for the repairs, maintenance, or improvements made during the term of this lease or this purchase agreement.

The agreement continued to provide that the $10,000 would go toward the final purchase price, and up to $20,000 in lease payments would also go toward the final purchase price. If the Woods did not purchase the property, however, the lease payments would strictly be considered lease payments. The document had signature lines and signatures for only John Wood, Holly Wood, and a notary.

The second document was the lease agreement for the same property. It provided that rent was $1600 a month due on the fifteenth of every month. The lease would run from

January 1, 2019, to July 15, 2020. Under the terms of the lease, the tenants were allowed to make repairs and alterations to the property. There are signature lines and signatures only for the Woods. Their signatures are dated December 18, 2018.

Miller testified that she drafted the agreements at Minett's direction but that she intended to give them to him to review. She said that neither she nor Minett ever signed the purchase agreement. Wood paid the $10,000.

Minett passed away on April 25, 2020. Some testimony established that Miller and Wood continued to try and work toward closing on the property, but they were unable to do so after Minett's death. Wood also testified that she had made improvements to the home's electrical, foundation, and drainage. She said she also paid for mold remediation.

Minett's estate was opened in Faulkner County on November 12, 2020. Minett's daughter, Sara Barlar, is the personal representative. On July 22, 2021, Wood filed a petition for consummation of sale and an affidavit of claim in the estate. The pleading alleged that closing before July 15, 2020, became impossible with Minett's death, and Wood therefore sought relief in Minett's estate pursuant to Arkansas Code Annotated section 28-49-114 (Repl. 2012), which provides,

> (a) When a decedent shall have entered into a contract for the conveyance of real property or sale of specific personal property which was not performed during his or her lifetime, the court, upon petition of . . . the purchaser . . . if it finds that the decedent, if he or she had lived, could have been required to make the conveyance or consummate the sale, shall direct the personal representative to execute the deed of conveyance or the bill of sale pursuant to the terms of the original contract. The conveyance or bill of sale shall have the same effect to pass the title or interest of the decedent as if made by him or her personally.

The estate responded to the petition and asserted several defenses, including the defense that the contract was unenforceable because it did not meet the writing requirements contained in Arkansas Code Annotated section 4-59-101 (Repl. 2023), the statute of frauds.

After hearing the evidence, the circuit court agreed that the purchase agreement fell within the statute of frauds. It then considered if any exceptions applied. In its findings, it discussed the elements of value paid, possession, and substantial improvements. The court found that the $10,000 constituted value paid. Regarding possession, the court found that Wood had taken possession pursuant to a lease, so the "possession" exception was not applicable. Finally, regarding substantial improvements, the court explained from the bench that there was no indication of when the money was spent and no evidence beyond Wood's testimony of what improvements were made and her speculation that the work "substantially improved the value of the property."

The court concluded that Wood did not present adequate evidence to except the contract from the statute of frauds. The court further found that Wood was unable to secure financing to close before the July 15 deadline; therefore, "had he survived[,] Mr. Minett could not have been required to make the conveyance." It denied her petition.

Wood now appeals. On appeal, she argues that (1) the circuit court erred in applying the statute of frauds, and (2) her ability to perform the contract by the option date was irrelevant. We agree that the statute of frauds applies without exception.

This court reviews probate matters de novo but will not reverse findings of fact unless they are clearly erroneous. *McAdams v. McAdams*, 353 Ark. 494, 497, 109 S.W.3d 649, 651 (2003). A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left on the entire evidence with the firm conviction that a mistake has been made. *Morton v. Patterson*, 75 Ark. App. 62, 65, 54 S.W.3d 137, 139 (2001). This court must also defer to the superior position of the lower court sitting in a probate matter to weigh the credibility of the witnesses. *McAdams, supra.* However, our appellate courts do not defer to the circuit court on questions of law. *Jones v. Abraham*, 67 Ark. App. 304, 310, 999 S.W.2d 698, 702 (1999).

An option to purchase real estate is an offer by one party to sell property within a limited period of time and a right acquired by the other party to accept or reject such offer within such time. *Jackson v. Crump*, 2022 Ark. App. 136, at 8, 643 S.W.3d 788, 792. By its nature, it is an agreement concerning the sale of land and is therefore governed by the statute of frauds. The statute of frauds provides that contracts concerning the sale of land must be signed by the person against whom the contract is sought to be enforced. Ark. Code Ann. § 4-59-101; *Blackmon v. Berry*, 57 Ark. App. 1, 939 S.W.2d 863 (1997).

The parties agree that the purchase agreement is subject to the statute of frauds because it concerned the sale of real property, and neither Minett nor his representative signed it. There are, however, common-law doctrines that override the statute of frauds to permit the enforcement of a contract that might not otherwise be enforceable. For example, partial performance of a contract by payment of a part of the purchase price and placing the

5

buyer in possession of land pursuant to an agreement of sale and purchase is sufficient to except the contract from the statute of frauds. *Smith v. Malone*, 83 Ark. App. 99, 103–04, 117 S.W.3d 643, 646 (2003). Additionally, the possession of the property by the purchaser, together with the making of valuable improvements (that is, more than routine maintenance) on the property, has also been held sufficient to except the agreement from the statute of frauds. *Id.*

The court found that the contract was partially performed by value paid—Miller testified that Wood had paid $10,000. But payment of the purchase price alone is not sufficient part performance to except the contract from the statute of frauds. *Rolfe v. Johnson*, 217 Ark. 14, 16, 228 S.W.2d 482, 484 (1950).

Regarding possession, Wood was uncontrovertibly in possession of the property, but it was pursuant to a lease agreement and not pursuant to the contract to purchase. In order for evidence of possession to be sufficient, it must be solely referable to the agreement being challenged. *See, e.g.*, *Smith*, 83 Ark. App. at 104, 117 S.W.3d at 646.

Wood cites *Phillips v. Jones*, 79 Ark. 100, 95 S.W. 164 (1906), for the proposition that paying the purchase price coupled with either possession or substantial and valuable improvements should be enough to overcome the statute of frauds. The *Phillips* court wrote:

> While the continued possession, because of the fact that it may be referable to the antecedent right and not necessarily to the new right or estate created by the contract, is alone insufficient to prevent the operation of the statute, yet when accompanied by some further acts such as payment of part of the purchase price, or making substantial and valuable improvements which characterize the continued possession and make it referable to the new relation created by the contract, the two together are sufficient to satisfy the statute.

6

79 Ark. at 103, 95 S.W. at 165. In *Phillips*, the appellant originally owned and occupied a lot that was mortgaged and later foreclosed and sold at a judicial sale. The appellee purchased the property at the sale. The appellant then claimed that she and the appellee entered into an oral agreement whereby she would pay the appellee what he paid for the property at auction, and he would reconvey the property to her. Because her possession of the property began before the agreement pursuant to her prior ownership and occupation (the antecedent right), on appeal supreme court was hesitant to credit her as having met the possession requirement necessary to overcome the statute of frauds. The court was clear that there has to be something that alters the character of the tenant's continued possession and makes the tenant's continued possession "referable to the new relation created by the contract." *Id.*

Wood does not meaningfully challenge the circuit court's "valuable improvement" finding, and we agree that the circuit court's findings regarding the same are not clearly erroneous on this record. But, Wood explains, her possession coupled with payment was sufficient on its own to establish the contract sufficient to except it from the statute of frauds.

We are not so persuaded for two reasons. First, her possession was pursuant to a lease. Second, the $10,000 was for the right to buy the land, not as partial payment for the land itself. Despite being labeled "purchase agreement," the contract before us today is really an option contract. The logic in *Phillips* concerning possession, then, is doubly inapplicable here because, while possession may be a natural consequence of a purchase, it is too far attenuated when the bargained-for exchange is only the exercisable right to purchase.

This brings us to Wood's next argument, which is that Arkansas courts should adopt the judicial-admission exception to the statute of frauds. The purpose of the statute of frauds is to prevent actions based on false claims, not to prevent enforcement of otherwise legitimate transactions. *Dunn v. Womack*, 2011 Ark. App. 393, at 5, 383 S.W.3d 893, 898. It would therefore stand to reason then that if the party to be charged acknowledges (through pleadings or otherwise under oath) that the contract exists, then the purpose of the statute is fulfilled, and a formal writing requirement is no longer essential. *See* Wayne R. Barnes, *The Judicial Admissions Exception to the Statute of Frauds: A Curiously Gradual Adoption*, 55 Wake Forest L. Rev. 475 (2020). Wood, however, failed to make this argument to the circuit court below or obtain a ruling on it. So, while the point is well presented, we will not address it on appeal because it is not properly preserved. *City of Helena-W. Helena v. Williams*, 2024 Ark. 102, 689 S.W.3d 62.

Because we agree with the circuit court that Wood did not present evidence sufficient to except the agreement from the statute of frauds, we need not address the circuit court's alternate ruling regarding impossibility. The circuit court did not err in denying Wood's petition within the probate matter, and we affirm.

Affirmed.

VIRDEN and GLADWIN, JJ., agree.

*Wallace, Martin, Duke & Russell, PLLC*, by: *William N. Dawson*, for appellant.

*Kutak Rock LLP*, by: *J.R. Carroll* and *Caleb S. Sugg*, for appellee.