Cite as 2022 Ark. 209

# SUPREME COURT OF ARKANSAS
**No.** CV–22–430

|  |  |
|---|---|
| | **Opinion Delivered:** December 1, 2022 |
| ARKANSAS PAROLE BOARD; JOHN FELTS, BRETT MORGAN, ANDY SHOCK, BOYCE HAMLET, WENDY RYALS, JERRY RILEY, AND LONA MCCASTLAIN, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE ARKANSAS PAROLE BOARD; ARKANSAS DEPARTMENT OF CORRECTIONS, DIVISION OF CORRECTION; AND DEXTER PAYNE, IN HIS OFFICIAL CAPACITY AS DIRECTOR | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-21-6945] HONORABLE ALICE S. GRAY, JUDGE |
| APPELLANTS | |
| V. | REVERSED AND REMANDED. |
| WILLIS JOHNSON | |
| APPELLEE | |

**KAREN R. BAKER, Associate Justice**

Appellants Arkansas Parole Board; John Felts, Brett Morgan, Andy Shock, Boyce

Hamlet, Wendy Ryals, Jerry Riley, and Lona McCastlain, in their official capacities as

members of the Arkansas Parole Board; Arkansas Department of Corrections, Division of

Correction; and Dexter Payne, in his official capacity as Director of the Division of

Correction (the "Board"), appeal from the Pulaski County Circuit Court's order granting

appellee Willis Johnson's motion for judgment on the pleadings, entering judgment in

Johnson's favor for the relief requested in his petition, and denying the Board's motion for summary judgment. The Board presents one argument on appeal: The circuit court erred by entering judgment on the pleadings in favor of Johnson and finding that he is parole eligible. We reverse and remand.

I. *Facts and Procedural History*

On June 25, 1997, Johnson pleaded guilty to first-degree murder and aggravated assault, crimes he committed when he was fourteen years old. Johnson was sentenced to serve forty years' imprisonment for first-degree murder and a six-year consecutive prison term for aggravated assault—a total of forty-six years' imprisonment.

In 2017, the General Assembly passed the Fair Sentencing of Minors Act ("FSMA"). *See* Fair Sentencing of Minors Act of 2017, No. 539, 2017 Ark. Acts 2615. As will be discussed below, it is undisputed that the FSMA contains parole-eligibility provisions that apply retroactively to Johnson, but the parties disagree on how the FSMA impacts the calculation of Johnson's parole eligibility.

On November 3, 2021, Johnson filed a petition for declaratory judgment, injunctive relief, and mandamus relief seeking to remove any remaining uncertainty regarding the FSMA as applied to him. According to his petition, the Board was incorrectly calculating his parole-eligibility date and denying him a parole hearing. Relying on the FSMA, Johnson claimed that the Board erroneously listed his parole-eligibility date as October 8, 2025, but that he was parole eligible on October 8, 2021, after serving twenty-five years. Johnson sought a declaratory judgment that the FSMA applies to his sentences; that he is entitled to parole eligibility after twenty-five years' imprisonment; and writ of mandamus ordering the

2

Board to modify his parole eligibility. In the alternative, Johnson sought a declaratory judgment that the FSMA applies to his first-degree-murder sentence specifically, and given that he has already served twenty-five years, he must be made instantly parole eligible.

On December 8, 2021, the Board filed an answer to Johnson's petition requesting that the circuit court deny Johnson's petition. Also, relying on the FSMA, the Board denied that Johnson became parole eligible on October 8, 2021. The Board argued that his consecutive sentence for aggravated assault does impact his parole-eligibility date and that his sentences should be "stacked"—run one after another—for parole-eligibility purposes. Stated differently, the Board argued that the FSMA requires that he serve the additional parole-eligibility period applicable to his aggravated-assault conviction consecutively to his twenty-five-year parole-eligibility period for his first-degree-murder sentence. The Board argued that because Johnson was classified as a Class IV inmate, his is ineligible for meritorious good-time credit. Accordingly, the Board asserted that, based on the applicable parole-eligibility statutes, Johnson would be parole eligible on October 8, 2023, after serving twenty-five years for first-degree murder and two years for aggravated assault.

On December 30, 2021, Johnson filed his motion for judgment on the pleadings, arguing that there are no contested issues of material fact and that the only contested issues are purely legal in nature. On January 11, 2022, the Board filed its response to Johnson's motion for judgment on the pleadings and a cross-motion for summary judgment.

On May 23, 2022, after a hearing on the motions, the circuit court granted judgment in favor of Johnson and denied the Board's motion for summary judgment. The circuit court found that Ark. Code Ann. § 16-93-621(a)(2)(A) applied retroactively to Johnson's

3

sentences; "[s]ubsection (a)(2)(A) notes that the 25-year parole eligibility applies regardless of 'any applicable sentencing enhancements'"; and that the "25-year parole eligibility applies 'regardless of the original *sentences* that were imposed.'" Specifically, the circuit court found that the FSMA's twenty-five-year parole eligibility applies to Johnson's aggregate sentence for both the first-degree-murder and the aggravated-assault convictions rather than just the murder conviction. Further, the circuit court found that Johnson pleaded guilty to both offenses on June 25, 1997, with 259 days of jail-time credit. He began serving his sentences on October 9, 1996, and has therefore served more than twenty-five years of his forty-six-year aggregate sentence. Accordingly, the circuit court found that he is entitled to immediate parole eligibility based on the retroactive application of Ark. Code Ann. § 16-93-621(a)(2). The circuit court then ordered the Board to modify Johnson's parole-eligibility date to October 9, 2021, and that Johnson may immediately request a parole hearing. On June 2, 2022, the Board timely appealed.

III. *Law and Analysis*

On appeal, the Board argues that the circuit court erred by entering judgment on the pleadings in favor of Johnson and finding that Johnson was parole eligible after serving twenty-five years' imprisonment.

A motion for judgment on the pleadings is appropriate if the pleadings show on their face that there is no merit to the suit. *Palade v. Bd. of Trs. of Univ. of Ark. Sys.*, 2022 Ark. 119, 645 S.W.3d 1. When reviewing a grant of judgment on the pleadings, we view the facts alleged in the complaint as true and in the light most favorable to the party seeking relief. *Id*. We will affirm the circuit court's decision in the absence of an abuse of discretion.

4

*Id.* However, we review issues of statutory interpretation de novo, as it is for this court to determine the meaning of a statute. *Dep't of Ark. State Police v. Keech Law Firm, P.A.*, 2017 Ark. 143, 516 S.W.3d 265. The primary rule of statutory interpretation is to give effect to the intent of the legislature. *Keep Our Dollars in Independence Cty. v. Mitchell*, 2017 Ark. 154, 518 S.W.3d 64. We first construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* In conducting this review, we will reconcile statutory provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part. *Id.* Furthermore, we will not read into a statute language that was not included by the legislature. *Id.*

Here, the statute at issue, Arkansas Code Annotated section 16-93-621 (Supp. 2021) provides in pertinent part:

> (a)(1)(A) A minor who was convicted and sentenced to the former Department of Correction or the Division of Correction for an offense committed before he or she was eighteen (18) years of age and in which the *death of another person did not occur* is eligible for release on parole no later than after twenty (20) years of incarceration, including any applicable *sentencing enhancements*, and including an instance in which *multiple sentences are to be served consecutively or concurrently*, unless by law the minor is eligible for earlier parole eligibility.
>
> > (B) Subdivision (a)(1)(A) of this section applies retroactively to a minor whose offense was committed before he or she was eighteen (18) years of age, including a minor serving a sentence of life, regardless of the original sentences that were imposed.
>
> (2)(A) A minor who was convicted and sentenced to the department or the division for an offense committed before he or she was eighteen (18) years of age, in which the *death of another person occurred*, and that was committed before, on, or after March 20, 2017, is eligible for release on parole no later than after twenty-five (25) years of incarceration if he or she was convicted of murder in the first degree, § 5-10-102, or no later than after thirty (30) years of incarceration if he or she was convicted of capital murder, § 5-10-101, *including any applicable sentencing enhancements*, unless by law the minor is eligible for earlier parole eligibility.

(B) Subdivision (a)(2)(A) of this section applies retroactively to a minor whose offense was committed before he or she was eighteen (18) years of age, including minors serving sentences of life, regardless of the original sentences that were imposed.

(Emphasis added.)

As set forth above, the circuit court found that subdivision (a)(2)(A), which contains a twenty-five-year limitation, applied to Johnson's aggregate sentence for both first-degree murder and aggravated assault. Johnson argued and the circuit court agreed that subdivision (a)(2)(A)'s reference to "sentencing enhancements" supported his position that the twenty-five-year limitation applied to his aggravated-assault sentence. Further, the circuit court found that the reference to the term "sentences" contained in subdivision (a)(2)(B) also supported its interpretation of the statute.

On appeal, the Board argues that the circuit court erred in interpretating subdivision (a)(2)(A) to encompass both Johnson's first-degree murder and his aggravated-assault convictions. The Board argues that the FSMA provides that the twenty-five-year parole eligibility for first-degree murder applies only to a sentence for first-degree murder itself and not for the separate aggravated-assault conviction. The Board notes that the FSMA has separate parole-eligibility provisions for homicide and nonhomicide offenses. Subdivision (a)(2)(A), which is the provision applicable to homicide offenses, is silent on the effect of consecutive sentences. In contrast, subdivision (a)(1)(A), which is applicable to nonhomicide offenses, specifically states that it applies when multiple sentences are to be served consecutively. The Board argues that utilizing the negative-implication canon, we should hold that by excluding a reference to consecutive sentences in subdivision (a)(2)(A),

the General Assembly permitted the practice of stacking the parole time of consecutive sentences for juvenile homicide offenders.

For the reasons that follow, we agree with the Board's interpretation of the statute and hold that the circuit court erred. The plain language of subdivision (a)(2)(A) provides that Johnson is eligible for parole after serving twenty-five years for his first-degree-murder conviction. This subdivision does not state that it applies to any additional sentences imposed for separate offenses that were ordered to be served consecutively to the sentence for the murder conviction. In contrast, subdivision (a)(1)(A) does contain language stating that a nonhomicide offender is eligible for parole after twenty years, "including an instance in which multiple sentences are to be served concurrently or consecutively." A fundamental principle of statutory construction is the maxim *expressio unius est exclusio alterius*, also known as the negative-implication canon, which means that "the express designation of one thing may properly be construed to mean the exclusion of another." *Smith v. State*, 2020 Ark. 410, at 9. As the Board properly notes, by specifically referencing "multiple sentences . . . to be served consecutively," the nonhomicide provision, subdivision (a)(1)(A), prohibits the practice of stacking the time an inmate must serve before becoming parole eligible on each sentence. However, pursuant to subdivision (a)(2)(A), the opposite is true for homicide offenses where the General Assembly chose not to include this language. This interpretation is supported by an attorney general opinion, which discussed subdivisions (a)(1)(A) and (a)(2)(A) as follows:

> By specifically referencing consecutive and concurrent sentences, subdivision 16-93-621(a)(1) clearly prohibits stacking parole eligibility periods for minors convicted of multiple crimes *not* involving the death of another person. That specific prohibition in subdivision 16-93-621(a)(1), coupled with 16-93-621(a)(2)(A)'s silence on the

7

matter, means that stacking sentences to determine parole eligibility is permitted under subdivision 16-93-621(a)(2).

Indeed, the specific prohibition on stacking contained in subdivision 16-93-621(a)(1) demonstrates that where the General Assembly intended to prohibit stacking, it did so in unambiguous language. Moreover, a common rule of statutory construction is to give effect to each word of a statute so that no language is reduced to surplusage. If we read both subdivisions to prohibit stacking, but only one of the subdivisions includes a clause explicitly prohibiting stacking, then the inclusion of that clause becomes superfluous.

Op. Ark. Att'y Gen. No. 41, at 2–3 (2019). While attorney general opinions are not binding on this court, we have held that they can be persuasive. *Mississippi Cty. v. City of Blytheville*, 2018 Ark. 50, 538 S.W.3d 822. In this instance, we find the attorney general opinion on this matter persuasive.

Further, as to Johnson's argument that subdivision (a)(2)(A)'s reference to "sentencing enhancements" supported his position that the twenty-five-year limitation applied to his aggravated-assault sentence, we disagree. Subdivision (a)(1)(A) references both "sentencing enhancements" and "multiple sentences" that are served consecutively or concurrently. This demonstrates that the use of the words "sentencing enhancements" in subdivision (a)(2)(A) was not intended to include a consecutive sentence imposed for an additional offense. We hold that this language is instead referring to enhancements to the murder sentence itself. As the Board correctly points out, a sentencing enhancement increases the sentence for an offense based on some circumstance regarding the commission of that offense. *See, e.g.*, Ark. Code Ann. 16-90-120(a) (Supp. 2021) (imposing a sentencing enhancement for use of a firearm as a means of committing a felony); Ark. Code Ann. § 5-4-704 (Supp. 2021) (imposing a sentencing enhancement for targeting a law-enforcement officer or first responder). The circuit court also relied on subdivision (a)(2)(B)'s use of the

8

plural "sentences" to support its interpretation of the statute. However, as the Board asserts, the plural "sentences" follows the use of the plural "minors" in that subparagraph, which indicates that the plural form of "sentences" was used to grammatically agree with "minors."

Therefore, we hold that the circuit court erred in its interpretation of Arkansas Code Annotated section 16-93-621(a) and by finding that Johnson was parole eligible after serving twenty-five years' imprisonment. Because subdivision (a)(2)(A)'s twenty-five-year eligibility for first-degree murder does not apply to his consecutive sentence of aggravated assault, Johnson must serve the parole time for his aggravated-assault conviction before becoming parole eligible. We note that there appears to be some disagreement as to Johnson's inmate classification for good-time-credit purposes. As the Board notes, an exact calculation of good time can be submitted to the circuit court on remand. Accordingly, we reverse and remand for a recalculation of Johnson's parole-eligibility date in accordance with this opinion.

Reversed and remanded.

WYNNE, J., concurs.

WOMACK, J., dissents.

**ROBIN F. WYNNE, Justice, concurring.** I fully agree with the majority's interpretation of the parole-eligibility provisions of the Fair Sentencing of Minors Act of 2017 (FSMA). I write separately to highlight how "stacking" sentences to determine parole eligibility will result in de facto life sentences for certain juvenile offenders.

When enacting the FSMA, the General Assembly expressly stated its intent as follows:

9

(a)(1) The General Assembly acknowledges and recognizes that minors are constitutionally different from adults and that these differences must be taken into account when minors are sentenced for adult crimes.

(2) As the United States Supreme Court quoted in *Miller v. Alabama*, 132 S. Ct. 2455 (2012), "only a relatively small proportion of adolescents" who engage in illegal activity "develop entrenched patterns of problem behavior," and "developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds," including "parts of the brain involved in behavior control".

(3) Minors are more vulnerable to negative influences and outside pressures, including from their family and peers, and they have limited control over their own environment and lack the ability to extricate themselves from horrific, crime-producing settings.

(4) The United States Supreme Court has emphasized through its cases in *Miller, Roper v. Simmons*, 543 U.S. 551 (2005), and *Graham v. Florida*, 560 U.S. 48 (2010), that "the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes".

(5) Youthfulness both lessens a juvenile's moral culpability and enhances the prospect that, as a youth matures into an adult and neurological development occurs, these individuals can become contributing members of society.

(b) In the wake of these United States Supreme Court decisions and the emerging juvenile brain and behavioral development science, several states, including Texas, Utah, South Dakota, Wyoming, Nevada, Iowa, Kansas, Kentucky, Montana, Alaska, West Virginia, Colorado, Hawaii, Delaware, Connecticut, Vermont, Massachusse[t]ts, and the District of Columbia, have eliminated the sentence of life without parole for minors.

(c) It is the intent of the General Assembly to eliminate life without parole as a sentencing option for minors and to create more age-appropriate sentencing standards in compliance with the United States Constitution for minors who commit serious crimes.

2017 Arkansas Acts, No. 539, § 2 (footnote omitted). In *Miller, supra*, the United States Supreme Court held that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders. The idea at the heart of

10

*Miller* is that a sentencer should be able to take into account a juvenile homicide offender's youth and immaturity, his home environment, the circumstances of the offense, and the possibility of rehabilitation. The Arkansas General Assembly embraced the reasoning of *Miller*, as evidenced by the legislative intent set out in the FSMA.

Under the FSMA, a juvenile who commits multiple non-homicide offenses is parole-eligible after twenty years of incarceration regardless of the original sentences imposed. Ark. Code Ann. § 16-93-621(a)(1) (Supp. 2021). But, as explained in the majority opinion, consecutive sentences for a homicide offense and a non-homicide offense are stacked—i.e., run one after the other. Thus, a juvenile convicted of first-degree murder who is serving a life sentence (with parole eligibility after twenty-five years under the FSMA) plus consecutive sentences for non-homicide offenses could face up to forty-five years' incarceration before becoming eligible for parole. The maximum, of course, increases for a juvenile who has committed capital murder. If a juvenile commits capital murder, the *only* available sentence is life imprisonment with the possibility of parole after serving a minimum of thirty years in prison. Ark. Code Ann. § 5-10-101(c)(1)(B) (Repl. 2018). For example, Kuntrell Jackson,[1] a fourteen-year-old who was convicted of capital felony murder during an aggravated robbery but was not the shooter himself, would be subject to the same punishment as a seventeen-year-old who was convicted of committing a brutal, premeditated murder. In my opinion, this mandatory outcome is unjust. In addition, the State asserts in briefing that multiple homicide sentences would also be stacked. The result

---

[1]Kuntrell Jackson's convictions were affirmed by this court, *Jackson v. State*, 359 Ark. 87, 194 S.W.3d 757 (2004), and the denial of his petition for habeas relief, *see Jackson v. Norris*, 2011 Ark. 49, 378 S.W.3d 103, ultimately went before the Supreme Court in *Miller*.

11

would be that, if two people had been killed during the robbery in Jackson's case, he would be subject to a greater punishment—sixty years' imprisonment before reaching parole eligibility as opposed to thirty years' imprisonment for the seventeen-year-old—without having any of the *Miller* factors presented to the jury for consideration. I do not minimize the seriousness of capital felony murder, but I doubt that justice has been served under these circumstances. It is clear that de facto life sentences will be imposed on juvenile offenders without juries being able to make individual determinations about the propriety of such sentences.

In my view, stacking sentences for parole-eligibility purposes under the FSMA does not comport with the principles set out in *Miller* or the stated intent of the General Assembly in enacting the FSMA.

I respectfully concur.

**SHAWN A. WOMACK, Justice, dissenting.** Article 5, Section 20 of the Arkansas Constitution states that "[t]he State of Arkansas shall never be made defendant in any of her courts." Here, the State attempts to concede, relying on the ruling in *Perry v. Payne*, that sovereign immunity does not apply, and that declaratory judgment and mandamus are the appropriate vehicles for an inmate to bring a parole-calculation challenge. 2022 Ark. 112, at 4.

I disagree. The plain text of the Arkansas Constitution states that the State shall not be made a defendant in her courts. Thus, immunity applies regardless of the State's inaction. Given that the State—absent a clear constitutional exception to the contrary—shall never be a defendant in any of her courts, Arkansas courts lack jurisdiction to hear any case where

the State is a defendant. *See Ark. Dev. Fin. Auth. v. Wiley*, 2020 Ark. 395, at 9 (noting that "sovereign immunity is jurisdictional immunity from suit"); *see also Bd. of Trs. of Univ. of Ark. v. Andrews*, 2018 Ark. 12, at 5 ("Sovereign immunity is jurisdictional immunity from suit . . . ."). Once litigation proceeds against an immune defendant, the defendant has essentially lost this protection, regardless of the outcome. As I have articulated in *Perry*, we cannot get past this threshold inquiry to rule on the merits given the lack of jurisdiction.

I respectfully dissent.

*Leslie Rutledge*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellants.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellee.