Cite as 2024 Ark. 176
# SUPREME COURT OF ARKANSAS
No. CV-24-321

| | |
|---|---|
| | **Opinion Delivered:** December 12, 2024 |
| TORRY RODGERS<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS PAROLE BOARD; JOHN FELTS, IN HIS OFFICIAL CAPACITY AS CHAIRMAN OF THE ARKANSAS PAROLE BOARD; ARKANSAS DEPARTMENT OF CORRECTION, DIVISION OF CORRECTION;  AND DEXTER PAYNE, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE ARKANSAS DIVISION OF CORRECTION<br><br>APPELLEE | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-23-8667]<br><br>HONORABLE MACKIE PIERCE, JUDGE<br><br><br><br><br><br><br><br><br><br><br><br>REVERSED AND REMANDED. |

**KAREN R. BAKER, Associate Justice**

Appellant, Torry Rodgers, appeals from the Pulaski County Circuit Court's February 20, 2024, order denying his petition for declaratory judgment, injunctive relief, and mandamus relief; denying his motion for judgment on the pleadings; and granting the cross-motion for judgment on the pleadings filed by appellees, the Arkansas Parole Board (the "Board")[1]; John Felts, in his official capacity as Chairman of the Board; the Arkansas Department of Correction, Division of Correction (the "ADC"); and Dexter Payne, in his

---

[1]On January 1, 2024, the Arkansas Parole Board became the Arkansas Post-Prison Transfer Board. *See* Ark. Code Ann. § 16-93-201(a)(1) (Supp. 2023); *see also Kennedy v. Ark. Parole Bd.*, 2024 Ark. 135, at 2, 696 S.W.3d 812, 814.

official capacity as Director of the Division of Correction (collectively referred to as "appellees"). On appeal, Rodgers presents two points: (1) the circuit court erred by finding that Act 683 of 2023 did not apply to him; and (2) alternatively, this court must remand to the circuit court to rule without considering extrinsic evidence beyond the sentencing order. We reverse and remand.

I. *Facts and Procedural History*

On June 20, 2018, Rodgers entered a negotiated plea of nolo contendere in the Jefferson County Circuit Court to aggravated robbery, theft of property by threat of serious physical injury, and felon in possession of a firearm, all of which were committed in March 2017.[2] Rodgers was sentenced to concurrent terms of twelve years' imprisonment for each offense. Rodgers's sentencing order included a notation that "DEF WILL SERVE 100% ON AGG ROBBERY[.]" Rodgers's negotiated plea agreement noted that "Δ will serve 100% on Agg Robbery[.]" At the time these offenses were committed, the applicable law provided that

> (b)(1) Any person who commits a violent felony offense . . . subsequent to August 13, 2001, and who has previously been found guilty of or pleaded guilty or nolo contendere to any violent felony offense . . . shall not be eligible for release on parole by the board.
>
> (2) As used in this subsection, "a violent felony offense or any felony sex offense" means those offenses listed in § 5-4-501(d)(2).

Ark. Code Ann. § 16-93-609(b)(1)–(2) (Repl. 2016).

---

[2]As part of this negotiated plea agreement, Rodgers also entered a guilty plea for a separate count of felon in possession of a firearm that arose from subsequent felonious conduct. *See State v. Rodgers*, Case No. 35CR-17-391.

In 2008, Rodgers was convicted of residential burglary in the Jefferson County Circuit Court.[3] Effective April 1, 2015, residential burglary was added to the enumerated list of felonies involving violence found in Arkansas Code Annotated section 5-4-501(d)(2). *See* Ark. Code Ann. § 5-4-501(d)(2)(A)(xi) (Supp. 2015); *see also* Act 895 of 2015 ("Act 895"). Following the passage of Act 895, the ADC interpreted this change to apply only to residential burglaries that were committed after the date that the law went into effect. *See* Op. Ark. Att'y Gen. No. 026 (2023). Stated differently, in implementing Act 895, the ADC did not consider residential burglaries committed prior to April 1, 2015, to be "felonies involving violence" for purposes of calculating parole eligibility under section 16-93-609.

Over seven years later, on May 24, 2022, the Arkansas Attorney General was asked to determine whether a residential burglary committed before April 1, 2015, constituted a prior "violent felony offense" so that an offender convicted of a subsequent violent felony offense would be required to serve 100 percent of his or her sentence. *See* Op. Ark. Att'y Gen. No. 010 (2022). In determining that the ADC's interpretation of Act 895 was inconsistent with the law, the Attorney General reasoned that

> [g]ranted, residential burglary was not designated as a "felony involving violence" until 2015. But critically . . . nothing in subsection 16-93-609(b) suggests that to render an offender ineligible for parole after the commission of another violent felony offense, the prior residential burglary must have occurred after 2015[.]

*See* Op. Ark. Att'y Gen. No. 010.

Following the issuance of that opinion, the ADC abandoned the interpretation of Act 895 that it had adhered to since 2015. *See* Op. Ark. Att'y Gen. No. 026 (2023). As a

---

[3] *See State v. Rodgers*, Case No. 35CR-08-882A.

result, the ADC began treating residential burglaries committed prior to April 1, 2015, as "felonies involving violence" for purposes of calculating parole eligibility in accordance with sections 5-4-501(d)(2) and 16-93-609(b) and recalculated the parole-eligibility dates for offenders that had been impacted by this new interpretation. *Id.* Although Rodgers had negotiated a plea agreement, the ADC recalculated his parole eligibility in light of the 2022 attorney general opinion. Initially, the ADC had determined that Rodgers would be required to serve 70 percent of his sentence before becoming parole eligible on his aggravated-robbery conviction pursuant to section 16-93-618(a)(1)(C). However, following the opinion, the ADC recalculated Rodgers's parole-eligibility date to be the day that he will complete 100 percent of his twelve-year sentence due to his 2008 residential-burglary conviction.

In 2023, the General Assembly amended section 16-93-609 regarding the calculation of parole eligibility in connection with residential burglaries. *See* Act 683 of 2023 ("Act 683"). Specifically, effective August 1, 2023, section 16-93-609 was amended to clarify that

> [u]nless the sentencing order expressly designates that the defendant was sentenced under this section, "a violent felony offense or any felony sex offense" does not include residential burglary, § 5-39-201, committed before April 1, 2015, unless the defendant was sentenced on or after May 24, 2022.

Ark. Code Ann. § 16-93-609(b)(2)(B) (Supp. 2023); *see also* Act 683, § 2.[4]

On November 21, 2023, Rodgers filed a petition for declaratory judgment, injunctive relief, and mandamus relief with a copy of his sentencing order attached. In his

---

[4]The General Assembly subsequently passed Act 659 of 2023, which further amended section 5-4-501(d)(2). Specifically, effective January 1, 2024, residential burglary was removed altogether from the definition of "felony involving violence" for offenses committed on or after the Act's effective date. *See* Act 659, §§ 17–18.

petition, Rodgers argued that Act 683 explicitly applied to his sentence because he was sentenced prior to May 24, 2022, and his sentencing order did not expressly designate that he had been sentenced under section 16-93-609 as required by Act 683. Rodgers asserted that his prior residential-burglary conviction was therefore not a "felony involving violence," and the appellees were required to adjust his parole eligibility accordingly. Rodgers argued that the circuit court was not permitted to look past the sentencing order in making its determination on the basis of the express terms of Act 683.

On December 18, appellees filed a response to Rodgers's petition with a copy of Rodgers's 2018 negotiated plea agreement attached. Appellees argued that Rodgers was not entitled to the relief he sought because he failed to satisfy the prerequisites for a declaratory-judgment action; Rodgers's interpretation of Act 683 would lead to absurd results because the sentencing court would have been expected to foresee a future amendment to the statute that would require a sentencing order to contain a specific reference to section 16-93-609 in order to impose parole ineligibility; the notation on Rodgers's sentencing order was, and could only be, either a reference to the plea agreement or to the application of the then-current version of section 16-93-609 to his prior felony convictions, or to both; and based on the legislative findings and intent underlying Act 683, Rodgers was not an "affected person" within the meaning of the Act because he was bound by a plea agreement that he voluntarily entered and executed in which he expressly agreed to serve 100 percent of the twelve-year sentence imposed for his aggravated-robbery conviction. Appellees also asserted the defenses found in Rules 8(c) and 12(b) of the Arkansas Rules of Civil Procedure.

5

On December 28, Rodgers filed a motion for judgment on the pleadings, alleging that the only contested issue in the case was whether the notation contained in his sentencing order constituted an "express designation" that he had been sentenced under section 16-93-609 as required by Act 683. According to Rodgers, the exception found in section 16-93-609(b)(2)(B) that made residential burglary a "violent felony offense" for purposes of the calculation of parole eligibility was limited to those defendants whose sentencing orders contained an express reference to section 16-93-609, and a review of his sentencing order alone demonstrated that there was no such reference therein.

On January 12, 2024, appellees filed a response and cross-motion for judgment on the pleadings. Appellees argued that Rodgers's motion should be denied because he entered a plea agreement with full knowledge, as well as an express agreement, that the ADC would determine that he was ineligible for parole based on his prior convictions. Appellees stated that in the wake of the 2022 attorney general opinion, it was revealed that the ADC had miscalculated the parole-eligibility dates for some inmates, some inmates had been released due to the ADC's misinterpretation of the law, and some inmates claimed that they had pleaded guilty in reliance on the misinterpretation. Appellees argued that the legislative history of Act 683 made clear that the law was meant to remedy issues for *those* "affected persons" rather than to create a right to any remedies that did not exist before the Act became effective. Therefore, in light of Rodgers's plea agreement, appellees contended once more that he was not an "affected person" within the meaning of Act 683. Appellees further contended that the General Assembly did not prescribe any specific form that the express designation in the sentencing order must take, and because there was no specific-language

requirement, the notation in Rodgers's sentencing order was sufficient to provide notice that he would be ineligible for parole. Additionally, appellees argued that Rodgers's position that his sentencing order must have presciently cited section 16-93-609 as the only way to impose parole ineligibility was absurd because the order was entered before Act 683 became effective.

On February 12, the circuit court held a hearing on Rodgers's petition and the competing motions for judgment on the pleadings. At the outset of the hearing, the circuit court permitted appellees to substitute an unmarked copy of Rodgers's plea agreement into the record over Rodgers's objection because the copy that was appended to appellees' original response had been highlighted in certain areas. Additionally, the circuit court allowed appellees to proffer into the record a certified copy of the transcript from Rodgers's plea hearing over Rodgers's objection but explained that it was strictly for purposes of the record and that the court would not review the transcript. Both parties argued in accordance with their motions, and appellees also argued that if the circuit court was inclined to agree with Rodgers, the case should be transferred to the Jefferson County Circuit Court for entry of a nunc pro tunc sentencing order so that Rodgers's order would speak the truth that Rodgers was intended to serve 100 percent of his aggravated-robbery sentence due to his prior residential-burglary conviction.

On February 20, the circuit court entered an order denying Rodgers's petition for declaratory judgment, injunctive relief, and mandamus relief and motion for judgment on the pleadings and granting appellees' cross-motion for judgment on the pleadings. The circuit court's order stated that "[t]he Court, having considered the pleadings, arguments of

counsel, and relevant statutes and case law, finds . . . [appellees'] arguments are well-reasoned and are adopted by the Court in their entirety."

This timely appeal followed.

## II. *Points on Appeal*

### A. Preliminary Issues

For his first point on appeal, Rodgers contends that the circuit court erred by finding that Act 683 did not apply to him. However, as an initial matter, we must first address two preliminary grounds upon which appellees contend that our review of the merits of Rodgers's appeal is precluded.

### 1. *Separate and independent grounds*

First, appellees contend that Rodgers failed to specifically address most of appellees' arguments below, including arguments that Rodgers failed to meet the prerequisites for declaratory and mandamus relief; that Act 683 is inapplicable to Rodgers because he is bound by his negotiated plea and is not one of the "affected persons" under Act 683; or, alternatively, that any mistake or omission in expressly designating that Rodgers's prior residential-burglary conviction was a violent felony for parole purposes may be corrected by nunc pro tunc entry of an amended sentencing order. Appellees argue that we should affirm the circuit court without addressing the merits of Rodgers's appeal because the circuit court adopted all of the arguments they made below in denying declaratory relief, and therefore, Rodgers's failure to address all of the grounds of the adopted ruling is fatal to his appeal.

8

It is true that when a circuit court bases its decision on more than one independent ground and the appellant challenges fewer than all of those grounds on appeal, we will affirm without addressing any of the grounds. *See, e.g.*, *Evangelical Lutheran Good Samaritan Soc'y v. Kolesar*, 2014 Ark. 279, at 6. However, having conducted a close review of the record, we are not persuaded by appellees' position.

In their initial response to Rodgers's petition, appellees arguably raised the argument that Rodgers failed to satisfy the prerequisites for a declaratory-judgment action; however, discussion of this argument was perfunctory, and it was not developed as a basis for appellees' cross-motion for judgment on the pleadings either in the cross-motion or during the February 12 hearing. While appellees contend that this was a valid argument upon which the circuit court made its ruling based on the language of the final order, and Rodgers was therefore required to address it on appeal, we decline the invitation to bypass the merits of Rodgers's arguments on the grounds that he did not challenge this point. To conclude otherwise would compel us to affirm the circuit court based on Rodgers's failure to address each of the other arguments—ostensibly raised yet left undeveloped—in appellees' initial response, including every defense listed in Rules 8(c) and 12(b) of the Arkansas Rules of Civil Procedure, that could have been a basis for the circuit court to either rule in favor of appellees or otherwise dismiss the suit outright.

Next, appellees contend that Rodgers failed to challenge their argument that Act 683 was inapplicable to him because he is bound by his negotiated plea and is therefore not one of the "affected persons" under Act 683. However, we are satisfied that Rodgers does, in fact, address this issue on appeal, as it is a part of appellees' statutory-interpretation analysis.

9

As will be discussed in more detail below, Rodgers responds to appellees' position by arguing that he is an "affected person" within the meaning of Act 683 because his sentencing order, which is the only item that may be reviewed in making a determination regarding the applicability of Act 683, does not contain an express designation that he was sentenced under section 16-93-609.

Alternatively, appellees assert that Rodgers failed to challenge their argument that any mistake or omission in expressly designating that his prior residential-burglary conviction was a violent felony for parole purposes may be corrected by nunc pro tunc entry of an amended sentencing order. However, the circuit court clearly did not rely on this argument as a basis for its ruling because it did not order entry of an amended sentencing order. Therefore, we likewise decline to affirm the circuit court on this basis.

## 2. *Prerequisites for declaratory relief*

Next, appellees argue that Rodgers failed to meet the prerequisites for declaratory relief. Specifically, appellees contend that convicted offenders are typically barred from using declaratory-judgment actions to collaterally attack plea agreements, sentences, or parole-eligibility determinations. Appellees aver that we have only gone as far as holding that a declaratory judgment action *may* be appropriate *if* the ADC has acted ultra vires, has acted beyond its legal authority, or has failed to adhere to a parole statute, but that Rodgers did not allege any such actions by the ADC. Appellees further assert that even if Rodgers is not directly barred from collaterally challenging a parole eligibility issue, the denial of his petition must still be affirmed because he failed to meet all the prerequisites for declaratory relief.

That is, appellees now argue that Rodgers has failed to demonstrate that a justiciable controversy is ripe for judicial determination in his case.

However, in light of our review of the record, we are not persuaded by appellees' position. Appellees are correct that we have held that a criminal defendant may not use a declaratory-judgment action or a suit for an extraordinary writ to challenge a criminal conviction, sentence, or parole eligibility. *See, e.g.*, *Manning v. Norris*, 2011 Ark. 439, at 2 (per curiam). Despite that, we have also held that declaratory and mandamus relief may be appropriate if the ADC has acted ultra vires, has acted beyond its legal authority, or has failed to adhere to a parole statute. *See, e.g.*, *Schuldheisz v. Felts*, 2024 Ark. 137, at 3, 696 S.W.3d 817, 820. In the present case, Rodgers alleged in his petition that the ADC inaccurately calculated his parole-eligibility date and must recalculate it in light of Act 683— a parole statute. Thus, Rodgers's petition is not an improper collateral attack; rather, it is the appropriate vehicle for his claims. *See, e.g.*, *Ark. Parole Bd. v. Johnson*, 2022 Ark. 209, 654 S.W.3d 820 (holding that declaratory judgment and mandamus are the appropriate vehicles for an inmate to bring a parole-calculation challenge). Additionally, our review of the record leads us to conclude that Rodgers's case clearly presents a justiciable controversy that is ripe for determination. *See Robinson v. Payne*, 2024 Ark. 94, at 3–4, 688 S.W.3d 409, 413 (holding that declaratory relief may be granted if it has been established that (1) there is a justiciable controversy; (2) the controversy is between persons whose interests are adverse; (3) the party seeking relief has a legal interest in the controversy; and (4) the issue involved

11

in the controversy is ripe for judicial determination). Based on the foregoing, we likewise decline to affirm the circuit court's order on this basis.[5]

## B. Statutory Interpretation

Having determined that this case is properly before us, we turn to Rodgers's arguments on appeal. As discussed above, Rodgers first argues that the circuit court erred by finding that Act 683 did not apply to him.

A motion for judgment on the pleadings is appropriate if the pleadings show on their face that there is no merit to the suit. *Johnson*, 2022 Ark. 209, at 4–5, 654 S.W.3d at 823. When reviewing a grant of judgment on the pleadings, we view the facts alleged in the complaint as true and in the light most favorable to the party seeking relief. *Id*. We will affirm the circuit court's decision in the absence of an abuse of discretion. *Id*. However, we review issues of statutory interpretation de novo, as it is for this court to determine the meaning of a statute. *Id*. The basic rule of statutory construction is to give effect to the intent of the legislature by giving words their usual and ordinary meaning. *Thurston v. Safe Surgery Ark.*, 2021 Ark. 55, at 8–9, 619 S.W.3d 1, 7–8. When a statute is clear, it is given its plain meaning, and we will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. *Id*. In other words, if the language of the statute is plain and unambiguous, the analysis need go no further. *Id*. We construe statutes

---

[5]Appellees also assert that general contract principles bolster their position because Rodgers's negotiated plea agreement bars him from seeking declaratory relief. However, the determination of parole eligibility is solely within the province of the ADC, which must act in compliance with applicable parole statutes. *See Felts*, *supra*. As discussed above, declaratory and mandamus relief may be appropriate if the ADC has failed to adhere to a parole statute, which is what Rodgers has asserted. *See id*.

so that no word is left void, superfluous, or insignificant, and we give meaning to every word in the statute, if possible. *Id*. Furthermore, we will not read into a statute language that was not included by the legislature. *Johnson*, 2022 Ark. 209, at 5, 654 S.W.3d at 823.

As discussed above, the amended version of section 16-93-609 provides in pertinent part:

> Unless the sentencing order expressly designates that the defendant was sentenced under this section, "a violent felony offense or any felony sex offense" does not include residential burglary, § 5-39-201, committed before April 1, 2015, unless the defendant was sentenced on or after May 24, 2022.

Ark. Code Ann. § 16-93-609(b)(2)(B) (Supp. 2023); *see also* Act 683, § 2.

As he did below, Rodgers points to the plain language of the preceding subsection and contends that it applies directly to his case because he committed residential burglary before April 1, 2015, and he was sentenced for the aggravated robbery at issue in this case prior to May 24, 2022. Rodgers asserts that there is no designation within his sentencing order, whether express or otherwise, to section 16-93-609 as required by the statute, and he is therefore an "affected person" whose parole eligibility Act 683 was intended to remedy, and he is entitled to have his parole eligibility recalculated under the Act. Rodgers argues once more that, in determining whether a given sentencing order contains an express designation to section 16-93-609, we must look solely to that sentencing order. Rodgers asserts that the notation in his sentencing order did not constitute an express designation to any statute at all.

Appellees respond that the circuit court correctly ruled that the notation in Rodgers's sentencing order served to expressly designate that he had been sentenced under section 16-93-609. First, appellees argue that while Act 683 requires an express designation on any

sentencing order intending to invoke a residential burglary committed prior to April 1, 2015, as a violent felony offense, the Act does not prescribe the exact form the express designation must take. Specifically, appellees contend that the plain meaning of "expressly designates" is broad and does not require a direct citation to section 16–93–609, and that Rodgers's position to the contrary would lead to an absurd result. Second, relying on the legislative findings and intent underlying Act 683, appellees insist that Rodgers is not an "affected person" to whom the Act was intended to apply. Given Rodgers's negotiated plea agreement, appellees argue that he failed to demonstrate that ADC's misinterpretation of the law affected him because he knew all along that he would serve 100 percent of his aggravated-robbery sentence.

We agree with Rodgers's interpretation of section 16–93–609. It is undisputed that, in order for residential burglary to constitute a prior "violent felony offense" for purposes of calculating parole eligibility, the plain language of section 16–93–609(b)(2)(B) requires that a defendant's "sentencing order expressly designate[] that the defendant was sentenced under this section[.]" The primary disagreement between Rodgers and appellees is whether the notation in Rodgers's sentencing order constitutes an express designation. As appellees correctly note, in accordance with the plain meaning of the word, something is "express" when it is "[c]learly and unmistakably communicated; stated with directness and clarity." *See Black's Law Dictionary* 724 (12th ed. 2024). Further, to "designate" commonly means to "represent or refer to (something) using a particular symbol, sign, name, etc." *See id* at 561. As discussed above, Rodgers's sentencing order contained the following notation: "DEF WILL SERVE 100% ON AGG ROBBERY[.]" This notation does not constitute a direct

14

citation to section 16-93-609, nor does it clearly or unmistakably represent that Rodgers had been sentenced under that section. Contrary to appellees' argument that the statute does not prescribe the exact form the express designation must take or set forth any magic words that must be used, the meaning of "express" is unambiguous. Further, the language of the statute unequivocally limits our review to Rodgers's sentencing order alone as opposed to taking Rodgers's plea agreement, plea hearing, or any other evidence into consideration. As such, we are unpersuaded by appellees' position that, within the context of Rodgers's negotiated plea agreement and his prior criminal history, the notation in his sentencing order was a clear and unmistakable reference to the applicability of section 16-93-609.

Additionally, we disagree that this conclusion leads to absurd results. On the contrary, it is undisputed that the appropriate treatment of residential burglaries committed prior to the effective date of Act 895 was uncertain for purposes of calculating parole eligibility until the General Assembly enacted Act 683. It is clear from the plain language of Act 683 that the Act was meant to dispel any further confusion by clarifying that a prior residential burglary would only be considered a "violent felony offense" within the meaning of section 16-93-609 if a defendant's sentencing order contained an express designation to that section. Therefore, in accordance with the plain language of the statute, Rodgers's residential-burglary conviction is not a "violent felony offense" for purpose of calculating his parole eligibility. We are likewise unpersuaded by appellees' argument that Rodgers is not an "affected person" to whom the Act applies. In support of this position, appellees rely on the admittedly uncodified legislative findings and intent underlying Act 683, which provide that "[i]t is the intent of the General Assembly that this act apply solely to the recalculation of

15

parole eligibility for the affected persons and not create a right to a resentencing proceeding, a new trial, other remedy, or cause of action that did not exist before the effective date of this act." Act 683, § 1(b). As they did below, appellees assert that the Act's applicability is clearly designed to remedy the ADC's miscalculation of parole eligibility only for those convicted offenders who experienced a detrimental impact as a result of the ADC's erroneous interpretation of Act 895. However, as we concluded above, the language of section 16-93-609 is so plain that judicial construction is limited to what the statute itself provides. Notably, nothing in the language of the statute imposes a limitation such as the one appellees suggest, and as appellees note, "affected person" within the meaning of Act 683 is not a statutorily defined term. Consistent with our rules of statutory interpretation, our review is limited to the plain language of section 16-93-609, which supports Rodgers's position.

Alternatively, appellees argue that a nunc pro tunc correction of Rodgers's sentencing order would resolve any mistake or omission in the original sentencing order so that it speaks the truth. Specifically, appellees contend that the notation in Rodgers's sentencing order that "DEF WILL SERVE 100% ON AGG ROBBERY" was meant to reference the applicability of section 16-93-609(b) and that the absence of a direct citation to the statute was, at most, an inadvertent mistake or omission. It is true that a "circuit court has the power to correct clerical errors nunc pro tunc so that the record speaks the truth. Pursuant to Rule 60(b) of the Arkansas Rules of Civil Procedure, a circuit court may at any time correct clerical mistakes in judgments, decrees, orders, or other parts of the record and errors therein arising from oversight or omission." *Barnett v. State*, 2020 Ark. 181, at 2, 598

16

S.W.3d 835, 836 (internal citations omitted). However, importantly, this power is to make the record speak the truth, but not to make it speak what it did not speak but ought to have spoken. *State v. Rowe*, 374 Ark. 19, 25, 285 S.W.3d 614, 619 (2008). Contrary to appellees' assertions, it is not clear from the record that the absence of an express reference to section 16-93-609 in Rodgers's sentencing order was simply a clerical error. Therefore, we are not persuaded that entry of a nunc pro tunc sentencing order is proper in the present case.

In sum, we hold that the circuit court erred in its interpretation of Arkansas Code Annotated section 16-93-609(b)(2)(B). Accordingly, we reverse and remand. Having found that the circuit court's erroneous interpretation and application of the plain and unambiguous language of this statute warrants reversal, we need not consider Rodgers's alternative argument that we must remand to the circuit court to rule without considering extrinsic evidence beyond the sentencing order.

Reversed and remanded.

WOMACK and WEBB, JJ., dissent.


**SHAWN A. WOMACK, Justice, dissenting.** Dismissal of the case is proper pursuant to article 5, section 20 of the Arkansas Constitution.[1] Indeed, absent an express constitutional provision to the contrary, the State can never properly be a defendant in any of its courts.[2] Here, Rodgers improperly made the State a defendant when he petitioned

---

[1] *See Thurston v. League of Women Voters of Ark.*, 2022 Ark. 32, at 17, 639 S.W.3d 319, 327 (Womack, J., dissenting).

[2] *Id.*

for mandamus, declaratory, and injunctive relief in a new civil action below, 60CV-23-8667.[3] Instead, he should have petitioned in his underlying criminal case, 35CR-17-252. Accordingly, this court, like the circuit court below, lacks jurisdiction. For these reasons, the circuit court's order must be reversed and the case dismissed.

**BARBARA W. WEBB, Justice, dissenting.** The simplicity of this case has apparently befuddled my learned colleagues. Here are the legally significant facts, which are all commendably listed in the majority opinion:

1) Rodgers committed residential burglary in 2008.

2) Effective April 1, 2015, the General Assembly amended Arkansas Code Annotated section 5-4-501(d)(2) (Supp. 2015) to add residential burglary to the list of felonies involving violence for the purpose of making a convicted felon ineligible for parole pursuant to Arkansas Code Annotated section 16-93-609(b)(1)–(2) (Repl. 2016).

3) On June 20, 2018, Rodgers entered a negotiated plea of nolo contendere in the Jefferson County Circuit Court to aggravated robbery, theft of property by threat of serious physical injury, and felon in possession of a firearm, all of which were committed in March 2017.

4) In accordance with section 16-93-609(b)(1)–(2), the parole-eligibility statute in effect when Rodgers committed aggravated robbery, the sentencing court designated on Rodgers's sentencing order: "DEF WILL SERVE 100% ON AGG ROBBERY[.]"

5) Under these facts, the Arkansas Department of Correction (ADC) concluded that Rodgers was not eligible for parole.

It is so well settled as to be axiomatic that parole eligibility depends on the statute that is in effect when the defendant committed the offense. *Caroll v. Payne*, 2023 Ark. 125, 674 S.W.3d 770; *Jenkins v. Payne*, 2023 Ark. 184, 678 S.W.3d 770; *Sims v. Payne*, 2023

---

[3]*See Perry v. Payne*, 2022 Ark. 112, at 5 (Womack, J., dissenting) (holding Article 5, section 20 required the dismissal of the appeal from denial of writ of mandamus and declaratory judgment).

Ark. 187, 678 S.W.3d 766; *Rogers v. Ark. Dep't of Corr.,* 2022 Ark. 19, 638 S.W.3d 265; *Pitts v. Hobbs*, 2013 Ark. 457; *Aguilar v. Lester*, 2011 Ark. 329. This principle of law, ignored by the majority, is of pivotal importance for two reasons.

First and foremost, because Rodgers's eligibility for parole depends on the parole-eligibility statute in effect when he committed aggravated robbery, this court should be led to the inexorable conclusion that Rodgers is not parole eligible.

Second, we review de novo a circuit court's decision that there is no justiciable controversy. *Rogers v. Knight*, 2017 Ark. 267, 527 S.W.3d 719. In concluding that it was "not persuaded" that Rodgers failed to establish his entitlement to declaratory judgment, the majority failed to account for the fact that Rodgers's parole eligibility based on the parole statute in effect at the time he committed aggravated robbery was properly applied. I am mindful that declaratory judgment and mandamus relief "may" be appropriate if the ADC has acted ultra vires, has acted beyond its legal authority, or has failed to adhere to a parole statute. However, for the foregoing reasons, the sentencing court properly applied section 16-93-609(b) and the ADC correctly calculated Rodgers's parole eligibility. Accordingly, the ADC has *not* acted ultra vires, has *not* acted beyond its legal authority, and has *not* failed to adhere to a parole statute. Therefore, the circuit court did not err in dismissing Rodgers's complaint for declaratory judgment. *Harmon v. Noel-Emsweller*, 2022 Ark. 26. As Justice Wood stated in writing for the majority, when the ADC has properly calculated parole eligibility, it has not acted ultra vires and consequently, there is no justiciable controversy. *Id*. Therefore dismissal of a declaratory-judgment case is proper. *Id*. It is apparent that the majority's conclusion to the contrary is based entirely on Rodgers's assertion that the ADC

failed to properly calculate his parole eligibility. This dubious assertion rests on Rodgers's absurd argument that the sentencing court erred by failing to satisfy the then nonexistent requirement imposed almost five years later by Act 683 of 2023 that the "sentencing order expressly designate[] that the defendant was sentenced under this section[.]"

Moving forward, the majority has inexplicably fixated on a requirement created by Act 683 of 2023 that a defendant's "sentencing order expressly designate[] that the defendant was sentenced under this section[.]" At Rodgers's behest, the majority embarked on a fool's errand of statutory construction that is both unnecessary and inartful. Without conceding that this case even required statutory construction, it is apparent that the majority failed to analyze Act 683 correctly. In this case a more holistic approach to statutory interpretation, such as the one used by Justice Alito in *Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020), is more appropriate, as discussed more fully in my dissent in the companion case, *Wright v. Arkansas Post-Prison Transfer Board, et al.*

Before parsing the meaning of "express," the majority would have been better advised to delve more deeply into the meaning of "affected person." As the majority states, "[T]he basic rule of statutory construction is to give effect to the intent of the legislature by giving words their usual and ordinary meaning." By the plain wording of Act 683, the amended version of section 16-93-609(b) applies only to "affected persons." In pertinent part, Act 683 states:

> (b) It is the intent of the General Assembly that this act apply solely to the recalculation of parole eligibility for the affected persons and not create a right to a resentencing proceeding, a new trial, other remedy, or cause of action that did not exist before the effective date of this act.

20

Contrary to the majority's conjecture, the date on which Rodgers was sentenced did not automatically make him an "affected person" as contemplated by Act 683. The genesis of Act 683 can be traced to an Attorney General Opinion issued in 2022 which opined that the ADC had been misinterpreting section 16-93-609(b) concerning when residential burglary could be considered a felony involving violence for the purpose of calculating parole eligibility. Aware of the ADC's interpretation, certain criminal defendants had relied on it to their detriment in making plea agreements, believing that they would not be ineligible for parole. These defendants were the "affected persons" contemplated by Act 683. Before the circuit court, the State argued successfully that Rodgers was not a member of the class of affected persons because his plea agreement recited that he would have to serve 100 percent of his twelve-year sentence. In short, the State argued that Rodgers got exactly what he bargained for.

The phrase "affected person" is at least ambiguous, which triggers an in-depth search for legislative intent. *Ortho-McNeil-Janssen Pharms., Inc. v. State*, 2014 Ark. 124, 432 S.W.3d 563. Writing for the majority, Justice Baker stated:

> "[W]hen a statute is ambiguous, . . . we must interpret it according to the legislative intent, and its review becomes an examination of the whole act." *Johnson v. Dawson*, 2010 Ark. 308, at 5, 365 S.W.3d 913, 916; *see also MacSteel Div. of Quanex v. Ark. Okla. Gas Corp.*, 363 Ark. 22, 30, 210 S.W.3d 878, 883 (2005) (observing "that this court will not read into a statute a provision that simply was not included by the General Assembly"). "The basic rule of statutory construction is to give effect to the intent of the legislature." *Dep't of Human Servs. & Child Welfare Agency Review Bd. v. Howard*, 367 Ark. 55, 62, 238 S.W.3d 1, 6 (2006).

21

*Id.* at 10–11, 432 S.W.3d 571. Accordingly, it is untenable that the majority has chosen to begin and end its statutory construction by focusing on the meaning of a single word: "express."

Likewise, our rules of statutory construction require this court to construe Act 683 in a way that harmonizes the Act with our sentencing statutes. In Act 683, the General Assembly stated the following, in pertinent part:

> (b) It is the intent of the General Assembly that this act apply solely to the recalculation of parole eligibility for the affected persons *and not create a right to a resentencing proceeding, a new trial, other remedy, or cause of action that did not exist before the effective date of this act*.

(Emphasis supplied.) Before the passage of Act 683, Rodgers had no cause of action for collaterally attacking his plea agreement. The majority has legislated from the bench to create one.

Finally, without conceding that the sentencing court was required to anticipate the passage of Act 683 five years after Rodgers was sentenced, the notation on Rodgers's sentencing order, "DEF WILL SERVE 100% ON AGG ROBBERY," is an express designation that Rodgers was sentenced under section 16-93-609. The substance of that section is that defendants with prior violent felonies would be ineligible for parole.

In rejecting the State's argument on this point, the majority apparently credited Rodgers's argument that the notation "DEF WILL SERVE 100% ON AGG ROBBERY" did not constitute an express designation to any statute, let alone Ark. Code Ann. § 16-93-609, because the notation could refer to numerous statutes that require service of a sentence without any opportunity for parole. Rodgers specifically cites Ark. Code Ann. §§ 5-4-501(c)(1), (c)(3), (d)(1); 16-93-604; and 16-93-609 to support his contention that other

22

statutes could yield the combination of years of incarceration with no possibility of parole. It is unsettling that the majority did not summarily reject this obvious prevarication because only the version of section 16-93-609 that was in effect at the time of Rodgers's sentencing could account for the requirement that he serve 100 percent of his twelve-year sentence for aggravated robbery.[4]

---

[4]Arkansas Code Annotated section 5-4-501(c)(1) is a sentencing statute that imposes a minimum sentence of forty years. Forty is greater than twelve. The statute states:

> Except as provided in subdivision (c)(3) of this section, a defendant who is convicted of a serious felony involving violence enumerated in subdivision (c)(2) of this section and who previously has been convicted of one (1) or more of the serious felonies involving violence enumerated in subdivision (c)(2) of this section may be sentenced to pay any fine authorized by law for the serious felony involving violence conviction and shall be sentenced to imprisonment for a term of not less than forty (40) years nor more than eighty (80) years, or life.
> (2) As used in this subsection, "serious felony involving violence" means:
> (A) Any of the following felonies:
>> (i) Murder in the first degree, § 5-10-102;
>> (ii) Murder in the second degree, § 5-10-103;
>> (iii) Kidnapping, § 5-11-102, involving an activity making it a Class Y felony;
>> (iv) Aggravated robbery, § 5-12-103;
>> (v) Terroristic act, § 5-13-310, involving an activity making it a Class Y felony;
>> (vi) Rape, § 5-14-103;
>> (vii) Sexual assault in the first degree, § 5-14-124;
>> (viii) Causing a catastrophe, § 5-38-202(a);
>> (ix) Aggravated residential burglary, § 5-39-204;
>> (x) Aggravated assault upon a law enforcement officer or an employee of a correctional facility, § 5-13-211, if a Class Y felony;
>> (xi) Capital murder, § 5-10-101; or
>> (xii) Unlawful discharge of a firearm from a vehicle, § 5-74-107; or

Ark. Code Ann. § 5-4-501(c)(3) concerns sexual offenses committed against victims less than fourteen years of age:

> A defendant who is convicted of rape, § 5-14-103, or sexual assault in the first degree, § 5-14-124, involving a victim less than fourteen (14) years of age and who has previously been convicted of one (1) or more of the serious felonies involving violence enumerated in subdivision (c)(2) of this

23

An essential component of justice is the punishment of the guilty in accordance with the law. This case should be affirmed. I therefore respectfully dissent.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *David L. Eanes Jr.*, Ass't Att'y Gen., for appellee.

---

section may be sentenced to pay any fine authorized by law for the rape or sexual assault in the first degree conviction and shall be sentenced to life in prison without the possibility of parole.

Ark. Code Ann. § 16-93-604 concerns felonies committed between April 1, 1977, and April 1, 1983. Rodgers was born December 14, 1990. Arkansas Code Annotated section 16-93-609 is, of course, the code section amended by Act 283.